# CHARLESTON.

BARNETT, ADM'R. V. COAL & COKE RAILWAY CO.

Submitted October 16, 1917. . Decided November 6, 1917.

1. MASTER AND SERVANT—*Injury to Servant—Questions for Jury—Negligence—Contributory Negligence.*

   Where it is shown to be a custom among employes in the shops of a railroad company to push the cars by hand, from the transfer table through the various rooms of the machine shops to the places where they are to be unloaded or repaired, and the spaces between the side of a car and the door-ways are shown to be narrower at some door-ways than at others, and narrower at one side of the track in the same door-way than at the other, and one of such employes is crushed and killed in one of such narrow spaces while pushing at the side of a car being moved through one of the rooms, the questions, whether the railroad company was negligent in so constructing its door-ways and laying its tracks, and whether deceased was guilty of contributory negligence in attempting to pass through such narrow space, are mixed questions of law and fact to be submitted to the jury upon proper instructions by the court.   (p. 253).

2. COMMERCE—*Workmen's Compensation Act—Employe Engaged in "Interstate Commerce."*

   Employes in such machine shops are not engaged in interstate commerce in pushing a carload of lumber about the shops to the place where it is to be unloaded, which was loaded at a point in this state and hauled to the shops, its point of destination, likewise in this state, although the lumber was intended for use in building and repairing cars thereafter to be used, in part, in carrying interstate traffic.   (p. 256).

3. WORKMEN'S COMPENSATION ACT—*Classification.*

   Section 52 of the Workmen's Compensation Act excepts employers, who are engaged in both intrastate and interstate commerce, and such of their employes as are engaged in both intrastate and interstate commerce and whose employment is wholly within this state, and constitutes them distinct and separate classes, and provides a different method whereby they may obtain the benefits of the act than is provided for employers and employes of the general class.   (p. 256).

4. MASTER AND SERVANT—*Workmen's Compensation Act—Common Law Defense.*

   Section 26 of the Workmen's Compensation Act does not operate to deny to an employer, engaged in both intrastate and inter-

state commerce, his common law defenses in an action for negligence brought by one of its employes for an injury received while performing work pertaining distinctively to intrastate commerce, when his general employment was such as required him to perform services at times wholly intrastate and at other times in connection with interstate commerce, unless and until such employer and employe have filed with the workmen's compensation commissioner a writing, approved by him, accepting the provisions of the act. Until such writing is filed and approved and the basis thereby fixed for ascertaining the amount of premiums to be paid into the compensation fund, such employer can not be said to be in default in failing to pay the premiums. (p. 256).

5. SAME—*Action for Injury—Evidence—Similar Accident.*
   In an action for negligence, causing the death of an employe, evidence by the employer that no accident similar to the one which caused the death of deceased had previously occurred is generally admissible. (p. 261).

6. EVIDENCE—*Fact or Conclusion.*
   It is not proper to permit a witness for defendant to state that, in his opinion, the act which caused the death of plaintiff's intestate was a foolish thing for him to do. (p. 262).

Error to Circuit Court, Braxton County.

Action by J. W. Barnett, administrator of Homer L. Keener, deceased, against the Coal & Coke Railway Company, Judgment for defendant upon a directed verdict, motion to set aside verdict and grant a new trial overruled, and plaintiff brings error.

*Reversed and remanded for new trial.*

*Hall Bros.,* for plaintiff in error.

*Price, Smith, Spilman & Clay,* for defendant in error.

WILLIAMS, JUDGE:

J. W. Barnett, administrator of Homer L. Keener, deceased, brought this action against the Coal & Coke Railway company to recover damages on account of the death of deceased, alleged to have been caused by its negligence. After all the evidence had been introduced the court, on motion of defendant, directed the jury to find a verdict for it, over the plaintiff's objection, and later overruled his motion to set

aside the verdict and grant him a new trial, and entered judgment. The court's rulings on these motions constitute the principal errors assigned.

The action is brought under the state or common law, and it is admitted defendant had paid nothing into the workmen's compensation fund, provided by the Workmen's Compensation Act for the benefit of injured employes. Defendant is engaged in both intrastate and interstate commerce, about ninety or ninety-five per centum of its business being of the latter class, although its entire line of railroad is within the State of West Virginia. It maintains machine shops for the building and repairing of cars at Gassaway, and deceased, at the time of his injury, and for about a month prior thereto, was employed in the shops. The shops consisted of a number of large rooms through the walls of which open spaces or doorways were made for the passage of cars. It was the custom for the employes to push the cars, that were to be repaired or unloaded as the case might be, from the transfer table to the places where they were to be repaired or unloaded, some of them pushing at the rear and others at the sides of the car. Deceased was crushed while pushing at the side of a car loaded with lumber, the space between the side of the car and the jamb of the door being too small for the passage of his body. There are a number of such doorways at the shops, and there is evidence tending to prove that, in some of them the tracks were laid closer to one side of the doorway than to the other; that some of them were wide enough for the body of a man, pushing at the side of a car, to pass without injury, and others were not. This condition constituted the negligence of which plaintiff complains.

Whether it was negligence, under all the facts and circumstances of the case, is a mixed question of law and fact, which should have been submitted to the jury upon proper instructions by the court respecting defendant's legal duty to its employes. If defendant had constructed all of its doorways, and had laid its tracks leading through them, so that all the spaces would have been obviously too narrow to allow a man to pass through safely at the side of a car, we could

perhaps then say, as matter of law, such construction would not have been negligent; or, if it had made the doors wide enough, and had laid its tracks so as to leave a space on either side of all the doors wide enough for a man's body to pass safely, it would not have been negligent. But, to make the openings and lay the tracks so as to make some of them safe and others dangerous, but not obviously so, would seem to present a situation which would naturally invite.an employe into an unnecessary danger. It at least presents a question for the jury. It was defendant's duty to use reasonable care to provide for its employes a reasonably safe place in which to work. There does not appear to have been any necessity for constructing the doors and laying the tracks in the manner shown in the present case, and, therefore, as was said by Justice Day, in *Choctaw &c. R. Co.* v. *McDade*, 191 U. S. 64, there was no reason for subjecting deceased to dangers which were wholly unnecessary to the proper operation of defendant's business. See also *Kelleher* v. *Milwaukee &c. R. R. Co.*, 80 Wis. 584, where the death of a switchman was caused by the proximity of a shed to the tracks, which rendered the performance of his duties unnecessarily dangerous; and *Georgia Pacific Ry. Co.* v. *Davis*, 92 Ala. 300, where a brakeman was injured by a rock which was suffered to project too near to the track. And *Hoffmeir* v. *Kansas City-Leavenworth R. Co.*, 68 Kan. 831, where the conductor of an electric street railway was injured by one of the poles of defendant while he was on the footboard of the car collecting fares. In that case it appears the poles had been placed, unnecessarily, at irregular distances from the track. 1 Sher. & Redf. on Negligence, (6th ed.), Sec. 201. A case directly in point is *Ferrens* v. *Old Colony R. R. Co.*, 143 Mass. 197. There defendant owned a building which stood in its yards and was used as a blacksmith shop. Opposite the door there was a track which, from the door to the corner of the building, a distance of about twenty-two feet, approached the building and came so near to it at the corner that there was not room for a man to pass between the side of a car and the building. Defendant was employed as a blacksmith and was accustomed, when called upon, to assist

in moving cars in the yard. He had been employed for many years and was familiar with the premises, but had not assisted in moving cars on that particular track. When he took hold of the car to assist in moving it, he saw the building and the space between the track and the building but apparently did not appreciate the fact that there was not room enough for him to pass. In view of those facts and circumstances, the court held it could not rule, as matter of law, that defendant was not guilty of negligence in suffering the building to remain so near the track, or that plaintiff was guilty of negligence in attempting to pass through the space while assisting in moving the car. *Texas & Pac. Ry. Co.* v. *Swearingen*, 196 U. S. 51, is also in point. There a switchman was injured while in the performance of his duty by striking aginst a scale box located in close proximity to a switch track. It was contended that he knew of the situation and had assumed the risk. But it was there held that the question of the railroad company's alleged negligence in so locating the scale box, as well as the employe's contributory negligence in not avoiding contact with it, he having previous knowledge of its location, was a question for the jury.

What has already been said as well as many of the authorities cited, applies not only to the alleged negligence of defendant, but also to the alleged contributory negligence of deceased. Although it is proven he had previously assisted in moving other cars about the shops, there is no evidence that he had ever assisted in moving a car over the particular track in question. There is some testimony to the effect that he was warned of the danger while he was pushing the car, but whether he heard the warning and appreciated the danger is not clear, for he made no reply and continued pushing at the side of the car. There were two door-ways through which the car had to pass, and he had just passed through the first one safely, and no doubt supposed he could likewise pass through the next one. But the space at the second one was several inches narrower than it was at the first, the difference, however, was not so great as to be readily discerned at a distance, and there is some evidence that deceased was

leaning forward with his face down when he was pushing and at the instant he was caught in the narrow space. Moreover, it is proven that the walls of the car were braced with studding on the outside, which extended from the floor of the car to the top, at intervals; and that is a circumstance which might tend to confuse one's judgment respecting the size of the space between the door facing and the car. Deceased was not obliged to take measurements, or make careful inspections to ascertain the size of the opening, before attempting to pass through it; and he is not chargeable with negligence unless the situation presented was so plainly and palpably dangerous that no reasonable man would have assumed the risk. Whether it was so or not, was a question for the jury to determine from all the facts and circumstances.

Counsel for defendant contend that, at the time of deceased's injury resulting in his death a few hours thereafter, he was engaged in performing an act relating to interstate commerce, and the case falls under the Federal Employers' Liability Act, and not the state law. This position is not maintainable. The car which deceased was assisting in moving was loaded with lumber to be used at the shops in building and repairing cars; it had been loaded at Elkins and shipped to defendant's shops sometime before the injury, but how long before does not appear. The lumber had unquestionably reached its destination. Both the origin and destination of the shipment were in this State, making it clearly an intrastate shipment. That the lumber might thereafter be used in the manufacture or repair of cars employed in interstate commerce could not make the act of deceased in moving the car into the shops to be unloaded an act connected with interstate transportation.

It was held by the Supreme Court of the United States, in *Lehigh Valley R. Co.* v. *Barlow*, decided May 21, 1917, and reported in No. 15 of the United States Supreme Court Advance Opinions, published by the L. C. P. Co., July 1, 1917, that, "A member of a switching crew assisting in placing on an unloading trestle in the railway company's yards coal cars belonging to such company and loaded with supply coal for it, which with their contents, had passed over its

line from a point outside the state, and had remained in the yards upon sidings and switchings for several days before removal to the trestle, was not then engaged in interstate commerce, within the meaning of the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, chap. 149, Comp. Stat. 1916, Sec. 8657), since the interstate movement of the cars had terminated before they left the siding.''

In *Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242, U. S. 353, where an employe was injured while repairing an engine which had been used in interstate commerce before the injury and likewise so used afterwards, but where there was nothing to show that it was permanently or specially* devoted to such commerce, or assigned to it at the time of the injury, the court held the injured employee was not then engaged in an act of interstate commerce, and the case did not come within the Federal Employers' Liability Act. Likewise, in *Chicago &c. R. R. Co.* v. *Harrington,* 241 U. S. 177, it was held, that an employe of an interstate carrier, engaged in removing coal from storage tracks to coal chutes was not engaged in interstate commerce, although the coal had been previously brought from another state and was to be used by locomotives in interstate hauls. Apropos to this question, see also *Delaware &c. R. R. Co.* v. *Yurkonis,* 238 U. S. 439.

The facts presented here are much stronger to show deceased was not engaged in interstate commerce at the time of his injury than they were in the cases just cited. Numerous decisions by the courts of the different states of the Union, to the same effect, could be cited to support our conclusion on this point, but we deem the foregoing from the highest authority on matters relating to interstate commerce sufficient.

Defendant had not paid any premiums into the workmen's compensation fund. Nevertheless its counsel insist its common law defenses were not taken away. Evidence of contributory negligence and assumption of risk by deceased was admitted, but whether properly so depends upon the construction of section 52 of the Workmen's Compensation Act. The terms of Sec. 9 of the act, defining who are em-

ployers, within the meaning of the act, comprehend railroad companies whether they are engaged in interstate traffic or not; and Sec. 18, classifying the various industries to which the act applies, mentions "Steam and other railroads and transportation systems not otherwise specified." But Sec. 52 has special application to employers, such as defendant, who are engaged in carrying both intrastate and interstate or foreign commerce. Hence, according to the well recognized rule, that a general definition of a class is qualified or limited by a special definition of a particular class, which otherwise would be included in the general definition, Sec. 52 excepts railroad companies doing both an intrastate and an interstate business from the general class of employers, and constitutes them a separate and distinct class. Sec. 52 is as follows:

"The provisions of this act shall apply to employers and employes engaged in intrastate and also interstate or foreign commerce for whom a rule of liability or method of compensation has been or may be established by the congress of the United States only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate, or foreign commerce, except that any such employer and any of his employes working only in this state may with the approval of the commission, and so far as not forbidden by any act of congress, voluntarily accept the provisions of this act by filing written acceptances with the commission, and such acceptances, when filed with and approved by the commission, shall subject the acceptors irrevocably to the provisions of the act to all intents and purposes as if they had been originally included in its terms. Payments of premium shall be on the basis of the pay-roll of the employes who accept as aforesaid."

To the extent only that an interstate carrier may also be engaged in some other business or industry not connected, or intermingled in any way with interstate commerce, this section may apply the Workmen's Compensation Act unconditionally. But, so far as his business is so intimately connected with interstate or foreign commerce as not to be capable of classification as being distinctively either intra-

state or an interstate business, but which at times is wholly intrastate and clearly separable from interstate commerce, the act is made to apply only conditionally. Sec. 52 was designed to protect employes whose services, although rendered in one general line of employment, sometimes happens to be of a purely intrastate character and at other times so connected with interstate commerce as to make the state law inapplicable. It was framed with a view of avoiding conflict with the jurisdiction of congress over interstate and foreign commerce, because when it exercises that jurisdiction it supplants any state law relating to the same matter. And the protection relates only to so much of the employes' services as are distinguishable from interstate services and are wholly intrastate. And as to such services the act is made to apply only on condition that the employer, and such of his employes as are engaged partly in interstate and partly in intrastate work, but whose employment is wholly in this state, shall have elected in the manner therein provided to make it apply, that is, by filing with the commissioner written acceptances approved by him. The election so made, the statute says, "shall subject the acceptors irrevocably to the provisions of the act to all intents and purposes as if they had been originally included in its terms." No such election appears to have been made in the present case, and hence, it can not be said defendant was in default in not paying any premiums into the compensation fund. There was no way of ascertaining how much it should pay until such election was made, for the act provides that the premiums shall be based on "the pay-roll of the employes who accept as aforesaid, for work done in this state only." Not being in default in any manner mentioned in Sec. 26 of the act, the penalties therein provided could not apply to defendant, because the penalties are conditioned upon a default. It, therefore, follows that both plaintiff and defendant stood upon their common law rights and remedies.

Sec. 52 of the Workmen's Compensation Act was not relied on by defendant in *Watts* v. *Ohio Valley Electric Ry. Co.*, 78 W. Va. 144, 88 S. E. 659. It was not discussed in brief of counsel, nor was our attention in any way called to it,

wherefore the decision of that case is not a precedent on the question here presented. There, however, it appeared defendant operated two distinct railway systems, one within the City of Huntington and the other between that city and Ashland, Kentucky; and the injured employe was a motorman whose duties confined him to the city lines. But whether that fact would constitute a distinguishing feature between that case and this one we need not now determine. It is enough to say that the point here presented was not raised by counsel, was not discussed in the opinion, nor decided by the court. Hence, that case can not be regarded as authority in the determination of the question here. The chief defense in that case was, that defendant was an interstate carrier and the injured employe, at the time of his injury, was engaged in interstate commerce, wherefore, it was contended, the action should have been brought under the Federal Employers' Liability Act instead of under the state law.

Plaintiff should have been permitted to testify how far the doors, when open, projected beyond the jamb on the other side of the opening at which plaintiff was injured, and at the other openings through which the car had passed. Plaintiff had testified that the door did project at the point where deceased was caught, and there was also evidence that the other spaces were wider. This rejected evidence was pertinent as tending to show the conditions and circumstances respecting deceased's place of work.

It was proven deceased was killed while helping to push a gondola car belonging to defendant, and there was evidence that it sometimes handled, at its shop, cars belonging to other railroad companies. Plaintiff offered to prove by witness Blackshire, that all cars of the gondola type are not of the same size, and that other gondola cars had been moved through the door-ways in the same manner in which the one was being moved at the time deceased was injured, and the court rejected the evidence. It should have been admitted.

It was not error to permit witness Blackshire, in his answer to a question on cross-examination, to state his reason for trying to warn deceased when he was pushing at the

car; that it was "because (he) knew this car was too close to the jamb for a man to go through safely." The jury would naturally infer that it was because he either knew or thought it was unsafe, hence, the answer could not have been prejudicial. Witness may have had knowledge on that subject not possessed by deceased; and his answer does not imply that deceased either knew or ought to have known of the danger.

The door-ways through which the cars were pushed were shown to be similar in size and construction, and the testimony of Blackshire, offered by plaintiff to prove that, when pushing cars through the planing mill room, the men at the sides of the car sometimes passed between the car and the jamb of the door, should have been admitted. It tended to prove a custom prevailing among the workmen at the shops, and to disprove the charge of contributory negligence on the part of deceased.

I. N. Kalbaugh, a witness for defendant, who had been its superintendent of motor power at the shops for a period of seven years, during which time cars had been moved through the planing mill room in the same manner the car was moved on the occasion in question, was asked the following questions by defendant's counsel and answered as follows: "Q. During the time you have been there has anybody been hurt or injured in moving these cars through there? A. Not to my knowledge. Some of them may have been slightly hurt." And, after having testified concerning measurements which he had taken of the space in which deceased was caught and crushed, and had stated that a very thin man could go through that space, he was asked: "Q. Would it be a safe thing to do? A. It certainly wouldn't. It would be a foolish thing for a man to attempt."

The last question and answer above were improper because they called for the witness' opinion respecting one of the vital issues, whether deceased was guilty of contributory negligence. That was not a question to be determined by expert knowledge, or one calling for opinion evidence. The jury had to determine it according to their own opinion from

proof of the facts and surrounding circumstances, and not according to the opinions of particular witnesses. Moreover, the witness' opinion appears to have been based upon accurate measurements which gave him a knowledge of the danger deceased is not shown to have possessed.

Testimony that no other employe had been injured in the same manner as deceased, in a long period of operation, tended to prove defendant was not negligent in furnishing its employes a reasonably safe place in which to work, and according to the weight of authority was admissible. 4 Labatt on Mas. & Ser., Sec. 1587.

It was not error, however, to permit said witness to testify that deceased worked at repairing cars and cars of foreign railroad companies were sometimes repaired at defendant's shops. That testimony was admissible to show deceased was sometimes engaged in interstate commerce, although it did not tend to prove the particular work he was doing at the time he was injured was interstate commerce.

For errors herein pointed out, and particularly the error in directing the jury to find a verdict for defendant, the judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded for new trial.*