# CHARLESTON.

ARIS ADAMS *v.* KENTUCKY & WEST VIRGINIA POWER COMPANY

(No. 5590)

Submitted May 19, 1926.   Decided June 8, 1926.

(Rehearing Denied November 12, 1926.)

1. MASTER AND SERVANT—*Employer Failing to File Acceptances or Joint Election is not protected by Workmen's Compensation Act Against Damages for Injury to Employee Working in Interstate Service (Workmen's Compensation Law [Code 1923, c. 15P] § 52).*

   An employer engaged in intrastate and interstate commerce and failing to file written acceptances or joint election, as provided by Section 52 of the Workmen's Compensation Law (Chapter 15-P Code 1923), is not protected by the Act against damages for injury to one of its employees while working in the interstate service.   (p. 68.)

   (Workmen's Compensation Acts, C. J. § 44.)

2. SAME—*Employee, Injured in Interstate Service, Held Not Estopped by Accepting Benefits From Workmen's Com-*

*pensation Law From Instituting Common-Law Action Against Employer (Workmen's Compensation Law, § 52 [Code 1923, c. 15P] § 52).*

The employee in such case not being entitled to compensation under the Workmen's Compensation Law is not estopped by applying for and accepting current benefits thereunder from afterwards instituting an action at common law against his employer for damages.   (p. 72.)

(Workmen's Compensation Acts, C. J. § 156.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

LIVELY, WOODS, JUDGES, absent.

Error to Circuit Court, Mingo County.

Action by Aris Adams against the Kentucky & West Virginia Power Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*M. F. Millikan, Chlide Nelms* and *Goodykoontz & Slaven,* for plaintiff in error.

LITZ, PRESIDENT:

Defendant prosecutes error to judgment of the circuit court upon a verdict in favor of plaintiff for $20,000.00, the action being in trespass on the case for personal injury.

The defendant produces by steam power, in Logan and Mingo counties, West Virginia, large quantities of electricity which it distributes for sale over a system of high voltage wires through counties of this State and into Pike county, Kentucky.   June 10, 1923, the plaintiff sustained serious personal injury in the employ of defendant as lineman and electrician on its interstate electrical system from contact with a high tension line while painting the substation at Fall Branch, Mingo county, West Virginia.

The alleged negligence of the defendant in failing to furnish plaintiff a reasonably safe place to work is the basis of the action.   The declaration further charges that the defendant being engaged in interstate commerce and not having complied with Section 52 of the Workmen's Compensa-

tion Statute, is not within the protection of the Act. The defendant maintains: (1) that it was not guilty of negligence; (2) that the plaintiff was guilty of contributory negligence; (3) that the work in which plaintiff was engaged at the time of his injury did not relate to interstate commerce; and (4) that the plaintiff, by applying for and accepting benefits under the Compensation Act, is estopped to deny the defendant its protection.

As the evidence respecting the first two issues is in substantial conflict, the finding of the jury thereon should not be disturbed. Counsel for the defendant concede that the "paramount question" presented by the record "is whether the defendant was protected by the Workmen's Compensation Act".

The principal question of fact involves the ownership of the distributing line from the Fall Branch sub-station near the State line, across Tug River into Pike county, Kentucky, to serve the Fall Branch Coal Company. The evidence tends to show that this line was constructed by the defendant or its predecessor, Tug River Electric Company, in 1919. The testimony is conflicting as to whether it has been maintained by the defendant or the coal company. The contractual relation, if any, existing between them relative to the use or maintenance of the line is not shown. In view of these circumstances the jury was justified in finding that this line, as well as the sub-station on which the plaintiff was working at the time of the injury, was part of defendant's interstate system which included at least one other distributing line extending from Mingo county, West Virginia, into Pike county, Kentucky. The defendant in the operation of such system for the transportation of electricity from one State to another was thus engaged in interstate commerce; and the plaintiff at the time of the injury was performing service, pursuant to his employment, in interstate commerce. "The transportation or transmission of electric current from State to State through appropriate instrumentalities is commerce between the States." *Mill Creek Coal & Coke Company* v. *Public Service Commission,*

84 W. Va. 662, 100 S. E. 557. "The sale and transportation
of electricity generated in one State, and conveyed directly
to a purchaser in another State is interstate commerce.  It
is the essential nature of the service rendered which deter-
mines whether commerce is interstate or intrastate; if the
actual movement is interstate, it is immaterial that the place
of delivery or the place at which title passes is at the State
line.  The transportation of electricity is continuous from
this State to its ultimate destination in another State, and
consequently is interstate commerce." *Attleboro Steam &
Electric Co.* v. *Public Utilities·Commission,* (R. I. 1925) 129
Atl. 495.

As a basis of defense under the Compensation Law it was
stipulated:

> "That the defendant herein, at the time of the
> accident referred to in the declaration, to-wit,
> June 10, 1923, had complied with the general
> terms of what is known as the Workmen's Com-
> pensation Act of this State, and was fully pro-
> tected thereby, in all respects as provided by
> said act, except, however, that prior to said
> date the plaintiff and defendant had not filed a
> written joint election by the plaintiff and defend-
> ant with the Workmen's Compensation Commis-
> sion of this State, as contemplated by Section 52
> of Chapter 15-P of the Code of West Virginia, in
> cases in said Section provided for";

and shown that plaintiff had applied for and accepted
current benefits under the Compensation Act. Section 52 of
the statute (Sec. 52, Chapter 131, Acts 1919), provides:

> "In case any employer within the meaning of
> this act is also engaged in interstate or foreign
> commerce and for whom a rule of liability or
> method of compensation has been or may be es-
> tablished by the congress of the United States
> this act shall apply to him, only to the extent that
> his mutual connection with work in this State is
> clearly separable and distinguishable from his
> interstate work, and in such case such employer

and any of his employees thus engaged in both intrastate and interstate work, may, with the approval of the commissioner, elect to pay into the fund the premiums provided by this act on account of work done in this State only, by filing written acceptances, or a joint election with the commissioner, and such election when filed and approved by the commissioner shall subject the acceptor irrevocably to the provisions of the act to all intents and purposes as if they had been originally included in its terms. Payments of premiums shall be on the basis of the payroll of the employees who accept as aforesaid, for work done in this State only.''

The questions involved in this defense are: (1) whether as to its employes engaged in interstate service the defendant was required, under Section 52, to file with the Compensation Commission a special written election as well as to pay into the compensation fund; and (2) whether the plaintiff is estopped to deny the defendant the right of defense under the Compensation Act, notwithstanding its failure to comply with Section 52.

Section 52 of the original statute, enacted 1913, follows:

''The provisions of this act shall apply to employers and employes engaged in intrastate and also in interstate or foreign commerce for whom a rule of liability or method of compensation has been or may be established by the congress of the United States only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that any such employer and any of his employes working only in this State may with the approval of the commission, and so far as not forbidden by any act of congress, voluntarily accept the provisions of this act by filing written acceptances with the commission, and such acceptances, when filed with and approved by the commission, shall subject the acceptors irrevocably to the provisions of the act to all intents and purposes as if they had been originally included in its terms.

Payments of premium shall be on the basis of the
payroll of the employes who accept as aforesaid.''

In *Barnett* v. *Railway Co.*, 81 W. Va. 251, and *Suttle* v.
*Gas Co.*, 82 W. Va. 729, it is held that with respect to an
employer engaged in interstate commerce this section ap-
plies the provisions of the act unconditionally to those of
his employees whose work is wholly intrastate and clearly
separable and distinguishable from work in interstate com-
merce; but with respect to employees who are engaged
partly in intrastate and partly in interstate commerce it
applies only upon the condition that the employer and em-
ployees voluntarily accept the provisions of the act by for-
mal writing approved by the commissioner. Analyzing its
structure, in the latter case, Judge LYNCH said:

> ''This section embraces two parts: The first
> limited the application of the act, where the em-
> ployer is engaged in both interstate and intra-
> state commerce, to cases where, and to the extent
> that the intrastate work in which they are en-
> gaged is clearly separable and distinguishable
> from the interstate phase of the employer's busi-
> ness. That is to say, it limits the unconditional
> application of the act to the first class of em-
> ployes mentioned above, those working wholly on
> intrastate commerce as clearly distinguished
> from interstate work, and excludes its applica-
> tion to the second class, those working wholly in
> interstate commerce. The second part of section
> 52, the exception clause, deals with the third
> class of employes, those working partly upon in-
> terstate and partly upon intrastate commerce. As
> to them the act applies only conditionally, that is,
> the employer and such employes must first vol-
> untarily accept the provisions of the act by filing
> written acceptances with the commission for its
> approval, which it may grant or withhold. *Bar-
> nett* v. *Coal & Coke Ry. Co.*, 81 W. Va. 251, 94
> S. E. 150.''

The section was first amended by Section 52, Chapter 9,
Acts 1915, to read:

"In case any employer within the meaning of this act is also engaged in interstate or foreign commerce, this act shall apply to him, only to the extent that his mutual connection with work in this State is clearly separable and distinguishable from his interstate work, and in such case such employer and any of his employees thus engaged in both intrastate and interstate work, may with the approval of the commissioner elect to pay into the fund the premiums provided by this act on account of work done in this State only, by filing written acceptances, or a joint election with the commissioner, and such election when filed and approved by the commissioner shall subject the acceptors irrevocably to the provisions of the act to all intents and purposes as if they had been originally included in its terms. Payments of premiums shall be on the basis of the pay-roll of the employees who accept as aforesaid, for work done in this State only."

The case of *Miller* v. *Gas. Co.*, 88 W. Va. 82, involving a personal injury to an employee, July 29, 1916, re-affirms the doctrine of *Barnett* v. *Railway Co.*, and *Suttle* v. *Gas. Co.* As the plaintiff was engaged in general work over the interstate system of defendant, the joint election or acceptance of the parties under Section 52 was necessary to bring them within the provisions of the Act, and to determine how much the defendant should have paid into the compensation fund, based upon "the pay-roll of the employees who accept as aforesaid, for work done in this State only". *Barnett* v. *Railway Company*, cited. We are therefore of opinion that plaintiff is not estopped by applying for and accepting current benefits under the Compensation Act from prosecuting his common law remedy for damages against the defendant. The cases relied on by counsel for the defendant as sustaining the defense of estoppel are from States in which the injured employee is given the right of election to claim the benefits under the compensation act, or sue the employer at law for damages. These cases, therefore, properly hold that the election of the employee to pursue the remedy afforded by the act constitutes a waiver of his right to sue.

The rule is stated in Bradbury's Workmen's Compensation (3d ed.) p. 289, as follows:

> "When the statute gives the employee the right to elect between one of two remedies, as, for example, to claim 'damages' *or* 'compensation' from his employer, and is silent as to the effect of the election, doubtless the general doctrine of estoppel by election would apply."

In order to sustain a defense founded upon the doctrine of estoppel by election, it must appear that the plaintiff actually had two valid, available, and inconsistent remedies, and that he undertook to pursue one. 9 R. C. L. pp. 956, 957, 962; 8 L. R. A. N. S. p. 144; 22 L. R. A. N. S. p. 1153; *Dudley* v. *Barrett,* 66 W. Va. 363, 66 S. E. 741.

As the plaintiff at the time of the injury was entitled to pursue only his remedy for damages at common law, the doctrine of estoppel by election of remedies is inapplicable. *Hogan* v. *M. Y. Co. & H. RR.,* 139 C. C. A. 328, 223 Fed. 890, 12 N. C. C. A. 1050; *Waters* v. *Guile,* 148 C. C. A. 298, 234 Fed. 532. In the first of these cases it was held that the remedy for injury or death of an employee under the Federal Employer's Liability Act being exclusive, the bringing and subsequent discontinuance of an action at common law or under a State statute does not constitute an election of remedies which will bar a later suit under the Federal statute. In the second case, wherein the defendant railroad company, engaged in interstate commerce, had elected to come under the Michigan compensation act, it was held also that the remedy of a brakeman engaged in interstate commerce for injuries occasioned by the negligence of the railroad company, under the Federal Employer's Liability Act, being exclusive, his notice of injury to the railroad company and the Industrial Board in conformity with the Michigan compensation act, which terminated in a disagreement and failure to make settlement, did not estop him from subsequently suing under the Federal Employer's Liability Act.

There are not sufficient facts in the case under consideration to constitute the action of the plaintiff in applying for

and accepting current benefits under the Compensation Act either an estoppel in pais or estoppel by adjudication.

Counsel for the defendant assert that the affirmance of the judgment below would result in the reversal of the cases of *Fickeisen* v. *Wheeling Electric Co.,* 67 W. Va. 335, *Poor* v. *Electric Railway Co.,* 70 W. Va. 697, *Suttle* v. *Hope Gas Co.,* 82 W. Va. 729, and *Roberts* v. *Gas. Co.,* 84 W. Va. 368. The first two of these cases hold that one electric company delivering electricity to another is not responsible for defects in the lines owned and operated by the purchasing company. In the third case it is held that an employee of an interstate carrier of gas assisting in the erection of a three pole rig or derrick, to be used in cleaning out a gas well in order to accelerate the production, and whose work then and on other occasions was wholly distinguishable from the transportation phase of the business, is engaged in work clearly separable and distinguishable from interstate commerce within the meaning of Section 52 of the Workmen's Compensation Act. The fourth case holds that the excavation of a ditch by an interstate pipe line company preparatory to laying a gas pipe parallel to one of its existing main lines, and to be connected therewith for the purpose of increasing its carrying capacity, is not part of its commerce business, but is work clearly separable and distinguishable therefrom, and in the performance thereof such company is subject unconditionally to the provisions of the workmen's compensation act. In the opinion it is stated:

> "The work of excavating the ditch was purely construction work, within the State and was clearly separable and distinguishable from defendant's commercial business. The pipe line to be laid in the ditch was not part of defendant's means or appliance for carrying on either intrastate or interstate commerce, nor could it become such until the pipe was laid. *This is altogether unlike a case where an employee is injured while engaged in repairing an existing means or appliance already devoted to a commercial purpose,* as, for instance, the work of repairing an existing railroad track, bridge or depot, which is already devoted to commerce. In the *McKee* case, plaintiff's intestate was killed

by the falling in of the earth upon him while he was making an excavation for the foundation of an abutment for a new bridge, which was intended to take the place of an old one then in use, and we there held the work he was doing was separate and distinct from commerce. In the *Suttle* case, plaintiff's intestate was killed while assisting in the erection of a derrick over a gas well, preparatory to cleaning out the well in order to accelerate the flow of gas which was intended for both intrastate and interstate commerce, and it was held that such work was not connected with commerce. But in the *Barnett* case plaintiff's intestate was employed in transportation work, and the intrastate and interstate features of it were not clearly separable, and because of the provisions of Sec. 52 of the Workmen's Compensation Act, relating to employees engaged in both intrastate and interstate work, making as to them a limited application of the provisions and penalties of the act, it was held that the act did not apply in the particular instance."

It is thus seen that the charge of counsel is entirely without foundation. As already stated, the plaintiff in the present case when injured was engaged in repairing an existing means or appliance already devoted to interstate commerce.

We therefore affirm the judgment of the circuit court.

*Affirmed.*