THE UTAH IDAHO SUGAR CO., Appellant, v. TEMMEY, Industrial Commissioner, et al, Respondents

(5 N. W.2d 486.)

(File No. 8495. Opinion filed August 29, 1942.)

624

**Ashby D. Boyle,** of Salt Lake City, Utah, and **Dan Mc-Cutcheon,** of Belle Fourche, for Appellant.

**Hayes & Rentto,** of Deadwood, **Leo A. Temmey,** Atty. Gen., and **R. A. Smiley,** of Belle Fourche, for Respondents.

SMITH, J. Plaintiff sought a declaratory judgment on a single issue, namely, "Was it operating under the Workmen's Compensation Act on August 13, 1937, the date of defendant employee Umenthum's injury?" Umenthum maintained the negative of this proposition. The trial court concluded as a matter of law that plaintiff had manifested an election not to operate under the act. It entered judgment however dismissing the action. In reviewing the record we seek to determine whether the entry of such judgment was prejudicial to the plaintiff.

This action was instituted prior to the commencement of another action now pending in which Umenthum seeks to recover damages from plaintiff on the theory that the negligence of plaintiff was the proximate cause of his injury.

■ The controversy has its setting in a background of law and fact. Our Workmen's Compensation Act is of the elective type. Stevenson v. Douros, 58 S. D. 268, 235 N. W. 707. The legislature has implemented a purpose to induce employers and employees to elect to operate under its provisions by weakening the position of a rejecting employer or employee in actions wherein employees seek to recover damages for personal injuries or death. Sections 9444, 9445, Revised Code 1919. The failure of an employer to carry insurance as provided by the act, unless he has been relieved therefrom as therein provided, constitutes an election not to operate under its provisions. Richardson v. Farmers' Cooperative Union, 45 S. D. 357, 187 N. W. 632; Bower v. Nunemaker, 46 S. D. 607, 195 N. W. 506; Collins v. Chicago, Milwaukee and St. Paul Railway Company, 49 S. D. 411, 207 N. W. 460 and Stevenson v. Douros, supra.

After providing that every employer shall secure the payment of compensation to his employees in one of three described ways, the act as amended by Chapter 271, Laws of 1931, provides that:

"(d) Whenever an employer coming under the provisions of this act furnishes satisfactory proof to the Commissioner of Insurance, and the Industrial Commissioner of such employers solvency and financial ability to pay the

compensation required by this act and to make such payments to the parties when entitled thereto, he shall be relieved from the provisions of this act herein mentioned, provided that it shall be considered satisfactory proof of the employers solvency and financial ability to pay the compensation required by this act and satisfactory security therefor, when the employer shall show that he is a member of an association as provided for herein and shall submit a financial statement showing such association to be in a solvent condition."

Another pertinent provision of the act grants power to the Industrial Commissioner to "make rules and regulations" not inconsistent with the laws of this state for carrying out the provisions of this act. Section 9466, Revised Code 1919.

For use by employers in making application for relief from the provisions of the act dealing with insurance under the terms of the statute quoted supra, the Industrial Commissioner prepared a printed form and incorporated therein a notice entitled and reading as follows:

"Conditions of Exemption"

"The employer, if he wishes to continue under the provisions of Title 64, South Dakota Code of 1939, must furnish a statement of his financial condition, not later than the first day of August following. The certificate of exemption from the insurance requirements of the Workmen's Compensation Act, will expire on the last day of August of each year, unless the certificate is sooner revoked by the Commissioner of Insurance and the Industrial Commissioner, and the permit must be renewed annually upon application and the submission and filing of a financial statement. It is understood, however, that the employer, upon given (sic) the required notice, may waive this exemption from insurance."

There was also prepared a form "Certificate of Exemption." This form included a statement as follows: "This certificate shall be valid until the last day of August, A.D. 19——, unless sooner revoked."

On February 1, 1932, plaintiff made a financial showing and there was issued to it certificate No. 120 which stated that it was exempted until August 31, 1932. It made a further showing in August, 1932, and received certificate No. 161, stating that it was exempted to August 31, 1933. On November 5, 1935, a further showing was made and thereupon certificate No. 304 was delivered to plaintiff. This certificate was dated back to September 1, 1933, the expiration date of its former certificate and recited that plaintiff was exempted to August 31, 1936. No further showing was made until April 2, 1940, whereupon certificate No. 569 was issued dated April 2, 1940, and recited that plaintiff was exempted until August 31, 1940. It will be observed that this certificate was not dated back so as to cover the period intervening between its issue and the expiration date of the preceding certificate. It will be remembered that Umenthum was injured during this period on August 13, 1937. After a further showing made in August, 1940, certificate No. 15 was issued. This certificate recited it "shall be valid until the last day of _____, A.D. 19 ____, unless sooner revoked." In making these several applications for exemption plaintiff used the above described printed form in each instance, and received a Certificate of Exemption containing the above quoted statement with reference to its expiration.

During the period between August 31, 1936, the date on which according to its terms certificate No. 304 expired, and April 2, 1940, when the next certificate, No. 569, was issued, plaintiff reported about 116 separate injuries of employees to the Industrial Commissioner. These reports were followed by supplemental reports showing payments to doctors and hospitals and of compensation. Twenty-six of these injuries were reported prior to the date of the Umenthum injury. In at least two cases the Industrial Commissioner acted on reports made during this period. The record further shows that during the described period the office of the Industrial Commissioner made notations on his records describing plaintiff as a self-insurer. It also reveals that 29 other certificates were dated back to cover the

hiatus between the expiration date and the issuance of a new certificate. At least five of these dated-back certificates had been issued before the date of the Umenthum injury.

The injury to Umenthum was promptly reported to the office of the Industrial Commissioner; hospital, X-ray, and doctor bills were promptly paid and there was paid to Umenthum as compensation provided by the act an amount equal to 55% of his wages from the period August 13, 1937, to October 5, 1938. The aggregate of these payments to or on behalf of the employee during this period exceeded $1,000. As payments were made to Umenthum he receipted therefor on forms which described them as for compensation and in several instances, when the payments were somewhat delayed, he called at the office and sought payment. The record, however, indicates that he had no knowledge during this period of the fact that the last Certificate of Exemption issued to plaintiff had by its terms expired. According to the record that information came to him prior to the time in 1939 when plaintiff sought to negotiate a final settlement with him. Ever since that time Umenthum has maintained the position that, because plaintiff had neither provided insurance nor been relieved from so doing, it had elected not to operate under the act and had therefore become liable to him in an action at law for damages occasioned by its negligence. This action was instituted by plaintiff to secure an adjudication of its controverted status. As indicated, the trial court held that plaintiff had manifested an election to reject the act.

The first contention of plaintiff deals with the nature and boundaries of the power delegated to the Commissioner of Insurance and the Industrial Commissioner by Section (d), Chapter 271, Session Laws 1931 quoted supra. According to the view of plaintiff the power granted was merely to make a determination or finding as to the "solvency" and "ability to pay compensation" of the employer and in case of an affirmative finding as to such qualifications, the statute operated ipso facto to permanently exempt or relieve the employer. Reasoning from this premise, plaintiff concludes that the commissioners were without power to de-

limit the period of the employer's exemption, and contends that having made a showing of solvency and ability to pay, and that fact having been determined by the commissioners, the conclusion must follow that it was operating under the act as a self-insurer at the time of the Umenthum injury. This view is predicated upon the words used by the legislature as follows: "whenever an employer * * * furnishes satisfactory proof * * * of * * * solvency and financial ability to pay the compensation * * * he shall be relieved * * *." In our opinion the contention is inadmissible.

■ That there is no constitutional objection to the delegation to an administrative agency of quasi-legislative duties, so long as the applicable statute promulgates a legislative policy and outlines the standard to be followed in its execution, has become a settled principle of American jurisprudence. Application of Dakota Transportation, Inc., 67 S. D. 221, 291 N. W. 589; Panama Refining Company et al. v. Ryan et al, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446 and annotation at page 474; and see 24 Cornell Law Review 13.

■■ Dating from the historic case of Field v. Clark et al., 1892, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294, many cases have upheld the legislative branch of government in delegating authority to administrative agencies to relieve or exempt persons of described qualifications from the requirements of statutes. Illustrative cases are thoughtfully analyzed by Prof. Arnold R. Ginsburg in a note entitled "The Power of Dispensation in Administrative Law" appearing in 87 Penn. Law Review 201. That it was such a power of dispensation to grant relief to qualified employers, rather than a mere power to determine the present solvency and ability of an applying employer to pay compensation, the legislature intended to delegate to the named commissioners by the quoted statute, is the conclusion we have reached after considering the language it used in the light of its revealed intent to set up a system which would assure the prompt payment of workmen's compensation when due.

■ Manifestly, it was a continuing solvency and ability to pay that the legislature had in mind as a prerequisite

for exemption from the insurance requirement of the act. As practical men the legislators knew that financial status does not remain static and that a statute which expended its force in a single examination would provide little assurance of prompt payment of compensation during future years. To accomplish its purpose it was required by the nature of the subject matter with which it was dealing to set up an agency capable of maintaining constant watch and check on the employer's financial position and to clothe that agency with power to dispense and revoke relief or exemption. By use of the words "he shall be relieved" we think the legislature intended to convey the meaning "he shall be relieved by the commissioners." Because a different construction of the words it employed would go athwart the revealed legislative purpose we deem it inadmissible.

■■ In granting this power of dispensation the legislature established a policy and fixed the standard to control its execution but it refrained from prescribing the method to be used by the commissioners in accomplishing the legislative purpose. Under settled principles, the express power so granted is pregnant with implied power to do everything necessary or essential to its execution. Maxwell on the Interpretation of Statutes, 7th Ed., page 304. It is within the limits of this field of expressed and implied power that the authority of the Industrial Commissioner, under § 9466, Revised Code 1919, supra, to make rules and regulations is operative. It follows, we think, that the method adopted by the commissioners of granting exemption for fixed periods must be sustained unless it can be said to be arbitrary, capricious or unreasonable. Viewing the adopted method in this aspect, plaintiff brands it as unreasonable. This, according to plaintiff, for the reason that the dates of expiration are in no manner related to a change in the financial status theretofore determined, and for the further reason that employers who actually intend to operate under the act through carelessness or neglect will fail to effect annual renewals of their exemption and thus, without actual intention so to do, withdraw the benefits of the act from their employees during periods of hiatus. It seems significant to

us that the evil to which plaintiff points attends the operation of all of our statutory provisions dealing with Workmen's Compensation insurance and that although the rule of Richardson v. Farmers Co-operative Union, supra, that failure to insure manifests an election not to operate under the act, was pronounced in 1922, no steps have been taken by the legislature to cure that evil. It may be that the method for which plaintiff contends, namely, granting of continuing exemption subject to revocation on notice and hearing, would be more efficient. We are of the opinion, however, that whether a method adopted by an administrative agency is the most efficient method available is not the test of its reasonableness. The adopted device of limiting relief to a definite period accomplished the legislative purpose by placing the burden on the employer of re-establishing qualification at reasonable intervals. After all there is little to distinguish between the two methods under consideration. Under this method an employer receives notice in advance that an annual showing must be made in August and the Certificate of Exemption operates as a constant notice of its expiration date. Under the method suggested by plaintiff he would receive a shorter notice that his exemption would be revoked unless he made a further showing of qualification. We perceive nothing in the adopted regulations of a burdensome nature or that renders conformance thereto unduly difficult. They are not arbitrary, capricious or unreasonable in character and we hold them valid.

Plaintiff further contends that if the commissioners had power under the act to grant a qualified employer relief, either permanent in character subject to revocation or limited in character subject to renewal, it also had power, without a further showing, to expand a limited exemption so granted into a permanent exemption subject to revocation. Pursuing this theory plaintiff argues that by their conduct or practice the commissioners have evidenced an intention to transmute the limited exemptions originally granted all qualified employers into unlimited exemptions of the character described.

■■ For the purpose of this decision, we concede the

commissioners to have been clothed with the described power. We may further concede that such a determination to change the character of exemption granted might be made summarily and without notice. For like purposes we make a further concession. We concede that an inference of such a determination to transform the character of the granted exemptions may rest upon evidence of conduct or practice of the commissioners. Thus we are brought to the record. In our opinion it fails utterly to evidence such a determination by the dispensing agency. Much of the conduct evidenced and so ably discussed is solely that of the Industrial Commissioner and consists in recording and dealing with employers and claims against them as though they were self-insurers during a period after a certificate of exemption had by its terms expired. To these acts the Commissioner of Insurance was a stranger. With the administration of the Workmen's Compensation Act his only connection is that described in the statute quoted supra. With the every day administration of the act he had no connection. The only evidence of conduct by the Commissioner of Insurance having any bearing on the issue, according to our view, is that of acting with the Industrial Commissioner from time to time in executing certificates of exemption purporting to retroactively cover the period between expiration dates of the old and dates of issue of the new certificate. To draw the suggested inference from this described practice in the teeth of the established fact that during the entire period the commissioners issued no new certificates without an additional showing and that every certificate issued continued to include an expiration date finds no ·warrant in logic. These facts reveal no more to us than an attempt on the part of the commissioners to grant relief retroactively, which manifestly they could not do.

The doctrine of estoppel is urged in a two-fold aspect. It is faintly argued that the conduct of the public officials described estops the defendant Umenthum from asserting that plaintiff was not operating under the act. It is also contended that defendant Umenthum has manifested an election to proceed under the act, has accepted benefits

thereunder and is therefore estopped. Whether, under an issue which deals with the actual status of the employer, the doctrine of estoppel may be urged in this character of proceeding was not raised in the trial court and we do not consider that question.

 No discussion is required to make it clear that conduct of the commissioners which falls short of the actual exercise of their statutory power to dispense relief can not bind an employer and we so hold.

 It is equally clear that the doctrine of election of remedies is without application to the facts of this case. In order that there may be an election of remedies more than a single remedy must be available. Koch v. Chicago Natl. Life Insurance Co., 59 S. D. 596, 241 N. W. 617; Henderson Tire & Rubber Co. v. Gregory et al., 8 Cir., 16 F.2d 589, 49 A. L. R. 1503. Not having been relieved from the provisions of the act requiring it to maintain insurance and having failed to provide insurance, the plaintiff manifested an election not to operate under the act. Richardson v. Farmers Co-operative Union, supra. Therefore, but one remedy, namely, an action at law, was available to Umenthum. It is not claimed that the sums received were in final compromise and settlement of the employee's demands. Under such a fact situation acceptance by the employee of a part of the benefits provided by the act does not invoke the principle of estoppel by election. Adams v. Kentucky & West Virginia Power Company, 102 W. Va. 66, 135 S. E. 662, 50 A. L. R. 217, annotation at page 223. (See note 11 Minn. Law Review 577); Grand Trunk Ry. Co. of Canada v. Knapp, 6 Cir., 233 F. 950; Waters et al. v. Guile, 6 Cir., 234 F. 532; Neumann v. Morse Dry Dock & Repair Co., Inc., D.C., 255 F. 97. We do not understand National Cast Iron Pipe Co. v. Higginbotham, 216 Ala. 129, 112 So. 734, cited by counsel, to express a contrary view. It hardly need be observed that adjudications cited predicated upon the existence of a choice of remedies are without application.

We are not now required to consider the effect of a retention of such benefits upon the maintenance of an action

at law and nothing said herein should be construed as an indication of our views upon that question.

 For the reasons set forth we have concluded that the judgment entered by the learned trial court in no manner prejudiced the rights of the plaintiff and it is therefore affirmed.

All the Judges concur.