**Bernard D. FAIR, Jr., Appellant,**

v.

**KORHUMEL STEEL AND ALUMINUM COMPANY, INC., Appellee.**

**No. 72–1421.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1972.

Decided Jan. 30, 1973.

Rehearing Denied March 15, 1973.

---

Jeremy C. McCamic, Wheeling, W. Va. (McCamic & McCamic, Wheeling, W. Va., on brief), for appellant.

Thomas B. Miller, Wheeling, W. Va. (Schmidt, Laas, Schrader & Miller, Wheeling, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and CRAVEN and BUTZNER, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal from the dismissal of Appellant Fair's common law negligence claim for damages against his employer, Korhumel Steel & Aluminum Company, Inc. As we read the district judge's oral opinion, he reasoned that since Fair had not proved Korhumel guilty of fraud but, instead, of "sloppy" procedures in attempting to qualify under the West Virginia Workmen's Compensation law, coverage resulted that would bar the negligence action. Applying West Virginia law, as we must in this diversity jurisdiction case, we conclude that fraudulent motivation is not the test. Because the undisputed facts show that Korhumel literally did nothing to bring itself within the Act, and there was no waiver by Fair of his negligence claim, we reverse and remand for a trial of the negligence action.

Fair was injured on March 22, 1967, while employed by Korhumel in its plant in West Virginia. An award totaling $2,832 was approved by the West Virginia Workmen's Compensation Commission, and this amount was paid to Fair. The award was directed to be paid by:

National Steel Corporation
Korhumel Steel & Aluminum Company Division
2424 Oakton Street
Evanston, Illinois

There was then no such thing as Korhumel Steel & Aluminum Company Division of National Steel.

Fair subsequently filed suit in district court against Korhumel alleging a common law tort action in negligence for his injuries. Korhumel asserted as defenses (1) its election and qualification to accept and participate in the scheme of the West Virginia Workmen's Compensation Act, and (2) Fair's waiver of any common law right by his prior acceptance of the compensation award.

The West Virginia Workmen's Compensation Act provides that statutory compensation is the exclusive remedy available to an injured employee where his employer has elected to come within the Act's coverage and has "complied fully" with the statutory scheme, including current payment of premiums. W.Va.Code Ann. § 23–2–6 (1966). The statute clearly sets out the steps necessary to obtain coverage. The first requirement, in the case of a foreign corporation (Korhumel was incorporated under the laws of Illinois), is the filing by the employer of a certificate showing that it has qualified to do business in West Virginia. The statute provides in part: "[N]o application of such foreign corporation employer shall be accepted by the commissioner until such certificate is filed . . . ." W.Va. Code Ann. § 23–2–1 (1966). Although Korhumel qualified to do business in West Virginia on November 20, 1964, no such certificate was ever furnished the Commissioner.

Unless qualified as a self-insurer (about which more later), an employer is required to make a deposit and pay

periodic premiums into a workmen's compensation fund in order to qualify. W.Va.Code Ann. § 23-2-5 (1966). Any personal injury claim by an employee against his employer is paid out of this fund. The amount of these periodic premiums is determined by the Commissioner, and it is based upon a percentage of the employer's payroll and varies with the type of work and degree of risk. The Act further provides that failure to pay the specified premiums or make the required deposit automatically terminates the employer's participation in the fund and deprives it of any protection afforded by the Act. W.Va.Code Ann. §§ 23-2-5, 23-2-8 (1966). Korhumel never made a deposit nor paid any premiums into the fund. Neither did it submit quarterly payroll reports—also required by the Act.

> Failure to pay premiums as herein provided or to make the quarterly payroll reports required by the commissioner shall deprive the employer so delinquent of the benefits and protection afforded by this chapter, and shall automatically terminate the election of such employer to pay into the workmen's compensation fund as herein provided, and such employer shall be liable to his employees as provided in section eight of this article . . .

W.Va.Code Ann. § 23-2-5 (1966).

An employer can become a "self-insurer," however, and obtain coverage without paying premiums. W.Va.Code Ann. § 23-2-9 (1966). When an employer is designated a self-insurer, the amount of an award to an injured employee is determined by the Commission, but the award is actually paid by the employer. In order to become a self-insurer, the Act requires a finding of fact by the Commissioner that the employer is of sufficient financial responsibility. Additionally, the employer is required to post an acceptable bond with the Commissioner. W.Va.Code Ann. § 23-2-9 (1966). Korhumel never sought a determination by the Commissioner of its financial responsibility, and none

was ever made. Neither did Korhumel post a bond in its corporate name.

Despite 100 percent failure to comply with the Act—either on a premium paying basis or as a self-insurer—Korhumel insists that sufficient steps toward enrollment were taken on its behalf by another company, National Steel Corporation. It appears that a Mr. Cramer, an employee of National Steel, Weirton Division, did contact the Commissioner in regard to qualifying Korhumel for coverage. The record is silent as to whether Korhumel ever authorized National Steel or Mr. Cramer to act for it. Mr. Cramer represented to the Commissioner that Korhumel was a "division" of National Steel, but the record does not support the representation. Indeed, even on appeal counsel are yet unable to disclose to us what, if any, relationship existed between Korhumel and National at the time of injury. All we know is that National Steel was a Delaware corporation and Korhumel was an entirely separate Illinois corporation. Under this misrepresentation, Korhumel was listed in 1965 as being included within the coverage of the existing workmen's compensation account for National Steel. As a result of this erroneous listing, Korhumel gained these advantages: (1) it escaped payment of 90 percent of the premiums required of a company not a self-insurer; (2) even the 10 percent was paid at a K-6 classification rate (apparently National's correct classification) of 70 cents rather than at the E-10 rate of $1.05, which would have been applied by the Commissioner if he had known Korhumel was a separate corporation and not a division of National; and (3) it escaped posting of the initial deposit required by law.

While mindful that the West Virginia Act should not be viewed with an overly technical eye, Mains v. J. E. Harris Co., 119 W.Va. 730, 197 S.E. 10 (1938), we find here such complete noncompliance by Korhumel as to require reversal of the order of the district court dismissing Fair's common law action.

Neither an employee nor an agent of Korhumel ever contacted the Workmen's Compensation Commission. The only persons who had any correspondence with the Commissioner were employees of National Steel. The record discloses no agency relationship. Entirely through the unauthorized acts of others, Korhumel was included within the National Steel account as a "division" of that corporation, although it was not. On these facts it is clear that Korhumel failed to obtain coverage and is precluded from now raising the Act as a bar to Fair's negligence action. To hold otherwise would require that we accord self-insured status to a corporation that has never shown that it has sufficient assets to protect its employees and has posted no bond—contrary to the letter and spirit of the West Virginia Workmen's Compensation law. Or, alternatively, such a holding would require that we accord participating status to a corporation that has never directly or indirectly paid the initial deposit, and for whose benefit there was paid (apparently by National) only ten percent of premiums due, and even those at a cheaper rate than applicable to Korhumel.

These defaults are not technical. They go to the heart of the statute—the public policy of assuring that employees will be protected.

Our Brother Bryan assumes that Korhumel's failure to qualify under the Act never "jeopardized even slightly Fair's security." It is this viewpoint which divides the court.

One of the purposes of the Workmen's Compensation law is indeed to assure indemnification. To allow an employer to elect after an accident whether there is workmen's compensation coverage can diminish that assurance. For the reasons previously stated—that Korhumel did nothing to bring itself within the Act—it could have successfully resisted coverage under the Act.

In this particular case there were presumably sufficient corporate assets to make it profitable for Korhumel to prefer compensation coverage. But it is not always so. For example, in December 1972 there were press reports that 21 employees were killed at the Weirton Steel complex in West Virginia. Multiple claims could well exceed corporate assets, which is why, of course, a self-insurer under the Act must show that assets are sufficient to assure compensation.

We agree that technical deficiencies in complying with the Act should be disregarded, but we cannot approve the creation of a situation that permits an employer to choose, after the event, whether it will be advantageous to come within the Workmen's Compensation Act.

■ Korhumel's second defense, that Fair waived his common law right by accepting $2,832 tendered him as a workmen's compensation award, is without merit. Fair accepted the money believing Korhumel was within the coverage of West Virginia's Workmen's Compensation law. Since it was not, his only claim against Korhumel was the common law claim he now seeks to prosecute. We think it clear that Fair did not waive his negligence claim by accepting money incorrectly tendered him as an award when the circumstances were that his employer knew the facts and he did not. United States v. Newton Livestock Auction Market, Inc., 336 F.2d 673, 677 (10th Cir. 1964); Pritt v. W. Va. Northern RR., 132 W.Va. 184, 51 S.E.2d 105, 116 (1948). As the West Virginia Supreme Court has said in another case involving acceptance of a compensation award, "As the plaintiff at the time of the injury was entitled to pursue only his remedy for damages at common law, the doctrine of estoppel by election of remedies is inapplicable." Adams v. Kentucky & W. Va. Power Co., 102 W.Va. 66, 135 S.E. 662, 664 (1926). The West Virginia Act provides that when an employer is adjudicated not to be covered by the Act, "an accounting in accordance with

the justice of the case shall be had of moneys received." [1]

On remand the district court will, of course, set off against any recovery obtained by Fair the amount of the award received by him.

Reversed.

ALBERT V. BRYAN, Senior Circuit Judge (dissenting):

Hypertechnical, I think we would be, to reverse the District Court. The Workmen's Compensation law's purpose was to assure indemnification to every employee injured (no matter how) in the course of his work. Despite the objectionable technicalities he now urges to bar his employer from recourse to the statute, the fact still is that employee Fair has without intermission enjoyed this assurance unconditionally and in full measure. Yet the majority penalizes the employer, Korhumel Steel & Aluminum Co., Inc., because of its omissions of certain statutory steps for employer-qualification under the law. Truth is none of these inattentions ever jeopardized even slightly Fair's security. Each of them was reasonably explained and readily remediable. But in my view, absent loss to the employee, correction was for the Compensation Commissioner and not by foreclosure of employer's defenses to the plaintiff's action.

The majority's decision, to me, overlooks the actuating concept of the compensation law. A primary and dominant aim was to give and to maintain for the employee prompt and unqualified indemnity for personal hurt and incidental expenses. If, as here, the overriding object has been continuously fulfilled—undiminished certainty of reimbursement—the employer's failure to comply literally should not condemn the employer irretrievably. West Virginia's courts have declared that this law is remedial in nature and must be given a liberal construction, Estes v. Workmen's Compensation Commissioner, 150 W.Va. 492, 147 S.E.2d 400, 403 (1966); but this canon includes the employer as well.

The majority opinion precisely enumerates what is required of the employer for compliance with the statute. As a foreign corporation Korhumel was obliged to file with the compensation commission a certificate of its qualification to do business in West Virginia. It so qualified, but neglected the formality of filing a certificate thereof with the Commission. Korhumel also failed to make the requisite deposit, pay requisite periodic premiums into the compensation fund, and make requisite reports. For these delinquencies the majority refuse the corporation the benefits of the statute. But these derelictions in perspective are not as horrendous as they appear on bald recital.

Korhumel did not separately comply with these requisites of the statute solely because it thought itself covered as a "division" of National Steel Corporation by virtue of National's qualification. Korhumel's capital stock was wholly owned by National. National's self-insurance was never doubted as also adequate to cover Korhumel's predictable claim obligations. Korhumel operated on National's property, under lease, at Weirton, West Virginia, where the plaintiff Fair was working. Indeed, his complaint alleges that it was National's obligation to maintain the safety of his place of employment. The machine on which the plaintiff was injured was purchased by Korhumel from the Midwest Steel division of National and was installed by National on the premises it leased to Korhumel.

On May 27, 1965, two years before Fair's accident and at the suggestion of National's vice-president, its representatives conferred with the Commissioner on the question of Korhumel's compli-

---

1. If any employer shall be adjudicated to be outside the lawful scope of this chapter, the chapter shall not apply to him or his employee; . . . and in every such case an accounting in accordance with the justice of the case shall be had of moneys received . . . . W.Va.Code Ann. § 23–2–11 (1966).

ance with the compensation law. The proposal was there advanced by the representatives that Korhumel be included under National's coverage as a division, in the same manner as the Weirton Steel Company. It was then indicated to the Commissioner that Korhumel was a division of National Steel like Weirton. Thereafter Korhumel employees' claims were reported under the National Steel employer's account number.

The plaintiff admits that Weirton was a division of National. Plainly, in fact, Korhumel was as much a division of National as was Weirton. The latter had become a part of National by the merger of its separate corporate existence into National; Korhumel had become so by National's acquisition of all of its capital stock. After the merger Weirton continued to operate with its own administrative staff, its president, vice-president and other officers, just as Korhumel was doing on the day of the accident.

Three days after Korhumel's representatives met with the Commissioner the following letter of confirmation was written by National's Director of Compensation Department to the West Virginia compensation official:

"May 27, 1965

"F. L. Rippetoe, Chief
Accounting Division
Workmen's Compensation Fund
112 California Avenue
Charleston, West Virginia 25305

"Dear Mr. Rippetoe:

"Confirming the result of our conference with Commissioner C. B. Hanley and yourself on the afternoon of May 24, 1965, we set forth here our understanding of procedure relative to coverage for employees of the Korhumel Steel and Aluminum Division of the National Steel Corporation.

"It was agreed that the National Steel Corporation operating in West Virginia under Risk No. 54–76, in completing the quarterly report of earnings, would continue to exhibit the Weirton Steel Company Division under Class E–1 (Iron & Steel Manufacturing) at a base rate of .65 cents per $100 payroll. It was also agreed that the report will also display the payroll for the Korhumel Division listed under Class K–6 (Wholesale, Warehouse and Dairy) at a base rate of .55 cents per $100 payroll. Workmen's Compensation coverage including catastrophe and second injury funds was to be in effect as of May 24, 1965, for the employees of the Korhumel Division and National Steel Corporation will begin reporting of payroll for this Division as of that date.

"We are most grateful to Mr. Hanley and yourself for the kind reception afforded us and the promptness with which the coverage was initiated.

"Cordially,
"James H. Cramer, Director
Compensation Department"

Certainly the facts heretofore stated refute the assertion of employee Fair that in the conference and in the letter Korhumel was *misrepresented* as a "division". Concededly, there was no concealment of the relationship between National and Korhumel. The periodic reports to the Commissioner required of National over the two years elapsing between the interview and Fair's accident referred to Korhumel as a division of National.

Surely National could never be heard to say that Fair was not covered by its insurance. Its amplitude has never been doubted. National's letter to the Compensation Commissioner, supra, vouches Fair as an employee when it confirms that Korhumel's payroll is embodied in National's report of earnings. Obviously, Korhumel's payroll was thus made National's and consisted of the names of those who National considered as the equivalent of its employees. Furthermore, in his application for compensation, Fair said he was "employed by National Steel Corporation (Korhumel Steel & Aluminum Company)" and it appears

similarly in the report of his injury to the Commissioner. The parenthesizing emphasizes that Korhumel was not primarily the employer. These facts make conclusive Fair's National employee status unless we reject the actual identification of Fair with National in favor of a legalistic construction.

Finally and foremost, if Korhumel was not a division of National, or if it was a division but the West Virginia statutes nevertheless required Korhumel to qualify separately, correction and cure lay in the province of the Commissioner. In either event, the Commissioner could have, and still can, effectuate such measures as are appropriate, for example: divorcement of Korhumel from National's coverage, payment to the Commissioner of any deposit or premiums accrued but unpaid, as well as any other corrective acts. Noncompliance, if any, in the circumstances of this case surely does not warrant forfeiture of employer's defenses in favor of Fair.

To the majority's judgment of forfeit, I must dissent.