# CHARLESTON.

BUD C. SMITH v. UNITED FUEL GAS COMPANY.

Submitted April 18, 1922.   Decided April 25, 1922.

1. MASTER AND SERVANT—*Employment in Interstate Business, Held Question for Court.*

Upon an admitted or clearly established state of facts, the question whether an employer's business is interstate or intrastate in character, is generally one of law for determination by the court.   (p. 55).

2. SAME—*Repair Work on Stationary Engine of Plant of Company Producing and Marketing Gas Held Part of its "Interstate Business."*

Cleaning, repair and adjustment of large stationary gas engines constituting part of a compressor plant of a company producing, transporting and selling natural gas, both within and without this State, used in the collection of such gas from the wells and drawing and forcing it through pipe lines from the wells to the places of sale and consumption, by means of pumps and other instrumentalities, are parts of its interstate business.   (p. 56).

3. SAME—*Compensation Act Held Inapplicable to Employee Engaged in Interstate Business.*

As to its employees engaged in such work, it is not subject to the operation of the Workmen's Compensation Act, and, in an action by one of them for damages for a personal injury alleged to have been occasioned by its negligence, it may rely upon the common law defense of assumption of risk, contributory negligence and imputation of the negligence causing the injury, if any, to a fellow servant.   (p. 56).

4. SAME—*Instructions on Duty to Furnish Safe Place Held Not Justified.*

Proof, in an action by a servant against his master for damages for a personal injury alleged to have been negligently caused by the latter, that the place of work in which the injury was incurred was a space under an idle engine three feet high and seven feet wide and not subject to molestation or invasion by running machinery, or otherwise from any direction, or to danger from any other cause, and that the work done therein and in the course of which the plaintiff suffered an injury emanating from the work itself, is not evidence of unsafety of the place of work within the meaning of the law,

and does not justify the giving of instructions assuming the existence of such evidence.     (p. 57).

5.   SAME—*Safest Tools and Appliances Not Required.*

A master is not bound to furnish his servant the safest and best tools and appliances with which to perform his work. It suffices that he exercise reasonable diligence to provide reasonably safe and suitable implements for such work.     (p. 57).

6.   SAME—*Wrenches, Cold Chisel, and Hammer for Tightning Nuts on Bolts Held Reasonably Safe.*

In furnishing a servant suitable wrenches and a cold chisel and hammer with which to put iron or steel nuts on bolts and tighten them, the former to be used when practicable and the latter, when obstructions or the locations of the bolts render their use necessary, the master cannot be held liable for an injury resulting from their use, on the ground of breach of the duty imposed upon him by law to exercise reasonable duty to furnish reasonably safe and suitable tools and appliances. (p. 58).

7.   SAME—*Risk of Using Hammer and Chisel in Setting Nuts Assumed.*

The danger incident to the use of a cold chisel and hammer, in the setting of metal nuts on bolts, is an obvious and ordinary risk assumed by an adult servant, even though he lacks experience in the particular work done with such implements and provision might have been made by the master, for performance thereof in such manner as would have obviated necessity for the use of the chisel and hammer. (p. 59).

8.   SAME—*Directed Verdict Justified by Circumstances as to Injury to Eye by Flying Sliver.*

In an action by a servant against his master for damages for the loss of an eye, occasioned by a steel sliver flying from a nut, as an incident of an effort by the former to set the nut with a cold chisel and hammer, under the circumstances above indicated, the trial court, if requested so to do, should direct a verdict for the defendant.     (p. 59).

Error to Circuit Court, Roane County.

Action by Bud C. Smith against the United Fuel Gas Company for damages for personal injuries.     Verdict for plaintiff set aside and the plaintiff brings error.

*Affirmed.*

*Pendleton & Hedges* and *Harper & Baker,* for plaintiff in error.

*R. G. Altizer* and *S. P. Bell,* for defendant in error.

POFFENBARGER, PRESIDENT:

The judgment brought up by this writ of error set aside a verdict for $5,935.00 in favor of the plaintiff, for damages resulting from the loss of an eye, alleged to have been occasioned by the negligence of the defendant. Omission of the latter to provide the former, its servant, a safe place in which to perform the work he was doing and safe and suitable tools and appliances with which to perform it, and to warn him of the dangers incident to his employment, a claim of inexperience on his part having been asserted, is the ground of negligence alleged.

Deeming itself not to have been within the scope of the Workmen's Compensation Act, in respect of the transaction resulting in the injury complained of, the defendant, in addition to its denial of the charge of negligence, relies upon the common law defenses of assumption of risk, contributory negligence and infliction of the injury by the negligence of fellow-servants. In its admission of evidence and grants of instructions, the court, regarding this position of the defendant as having been well taken, recognized and allowed all of said defenses; but, for some reason, the motion for a new trial was sustained.

The injury occurred in repair or maintenance work done on one of the defendant's eight gas engines used at its Spencer Compressor Station in Roane County, provided and maintained for the collection of natural gas from neighboring gas fields and enforcement of its flow to Sugar Grove in the State of Ohio, by way of Sandyville and Ravenswood in Jackson County, W. Va. At Ravenswood on the Ohio River, it is measured and sold to the Ohio Fuel Supply Company, but continues its flow through an eighteen inch gas main, under force applied by compressor station at Spencer. The power plant of that station consists of eight gas engines, three of 960 h. p. each, three of 480

h, p, each and two of 300 h. p. each, operated in bat-
teries of about four running alternately. While some of them
are running, the others are cleaned, repaired and adjusted.
Working on one of them, while it was idle, the plaintiff suf-
fered the injury complained of.

Defendant's prosecution of interstate as well as intrastate
business, by means of its plant, and general employment of
the engines at its compressor, in the course thereof, seem to be
admitted. At any rate, these assertions are not expressly
denied, and they seem to be well founded in law. *United Fuel
Gas Co.* v. *Hallanan,* 87 W. Va. 396; *Barnett* v. *Coal & Coke
Ry. Co.,* 81 W. Va. 251; *Findley* v. *Coal & Coke Ry. Co.,* 76
W. Va. 747; *Suttle* v. *Hope Natural Gas Co.,* 82 W. Va. 729.
It is insisted, however, that, as the engine on which the plain-
tiff was at work, when hurt, was not actually employed in the
running of the compressor, at the time, it was not then used
in interstate business, and that, therefore, as to it, the defend-
ant must be deemed to have been engaged in intrastate busi-
ness only. Whether this position is sustained by *McKee v.
Ohio Valley Electric Co.,* 78 W. Va. 131, and *Watts* v. *Ohio
Valley Electric Co.,* 78 W. Va. 144, cases arising under the
Federal Employer's Liability Act, it is unnecessary to inquire,
for that act has no application. Only railroad employers and
employees are within its operation. Barnes' Federal Code
1919, sec. 8070. However, as the classification of the em-
ployees of an employer engaged in both kinds of business,
contemplated by the Workmen's Compensation Act, is made
with reference to the character of the business in which its
employees are engaged, they may be applicable, under cir-
cumstances justifying their application. They hold that an
employee engaged in service pertaining exclusively to intra-
state business or on a structure or other instrumentality not
actually used in interstate business, though designed and in-
tended to be so used, is not employed in interstate commerce.
In the Watts case, the traffic handled and the cars run, by
the employee, were clearly intrastate. In the other, the bridge
on which the injured employee worked was incomplete and
had not been used in any kind of traffic. The same observa-
tion may be truthfully made, respecting *Roberts* v. *United*

*Fuel Gas Co.*, 84 W. Va. 368, in which the Workmen's Compensation Act was successfully invoked. The employee was hurt while excavating a ditch for a pipe line, intended for use in interstate transportation but not yet actually so used. In *Suttle* v. *Hope Natural Gas Co.*, 82 W. Va. 729, production of oil and gas and the drilling and cleaning of wells were held to be intrastate business and separable from the company's interstate business. To bring an employer engaged in both kinds of business, within the act, as to the intrastate part, that part must have two qualities. It must be purely intrastate and also clearly separable from the interstate portion. Though intrastate, it must be clearly separable and distinct from the other. If intrastate and so closely related to the interstate, that it cannot be clearly distinguished and separated from it, the act does not apply in the absence of a voluntary submission to it, assented to by the compensation commissioner. *Miller* v. *United Fuel Gas Co.*, 88 W. Va. 82; *Barnett* v. *Coal & Coke Ry. Co.*, 81 W. Va. 251.

The engine on which the plaintiff was working, when hurt, was a part of the compressor plant by which the gas was driven across the state line into Ohio. It was not a mere movable instrument. On the contrary it was a very large permanent machine, being about 60 feet long and at least five feet in diameter. Its use in interstate business, when running, is admitted. It was bought and installed for such use, and is never diverted to any other. Its occasional idleness is merely incidental to its operation and its use in both kinds of business, at the same time. Repair of machinery is as much an incident of its operation as is its depreciation by use. In the large sense of the term, its cleaning, repairing and adjustment are parts of its use. Such use, however, might not suffice in itself, but it is enlarged and made conclusive by the fact that this engine, while undergoing treatment, still remained a part of the permanent plant which, as a whole, was in constant use, and the cleaning, repair and adjustment amounted to work on the plant. Hence, the work in which the injury occurred was manifestly a part of the interstate business of the defendant, and the trial court properly allowed interposition of the common law defenses in-

voked in the trial, assumption of risk, contributory negligence and imputation of the negligence, if any, to fellow-servants.

Naturally, a statement of the circumstances of the injury must precede the test of the correctness of the assumptions of evidence of negligence on the part of the defendant. The front of the engine rests on a solid concrete base and the rear on solid concrete pillars, extending from one side to the other. Between two of the pillars, there is a space of about seven feet within which two exhaust chambers depend from the cylinder, the valves of which have to be cleaned and ground at intervals. The chambers are attached to the bottom of the cylinder by steel bolts an inch and one-eighth in diameter. Plaintiff and a co-worker of his had taken down and out from under the cylinder or engine one of the chambers and ground the valve in it and were setting the nuts in replacement thereof, when the injury occurred, one of the men on each side between the supporting pillars. On account of obstruction by a valve rod, called the pull rod, two of the nuts could not be set with a wrench and a cold chisel and hammer were used instead. This obstruction was on plaintiff's side and, with his body partly or wholly under the engine and his head and shoulders elevated as much as possible, he was setting one of the nuts with a chisel and hammer when a sliver of steel from the nut flew into his left eye, penetrating the ball thereof and inflicting an injury which necessitated excision of the eye, some days later. In the performance of that function, his position was cramped, inconvenient and no doubt uncomfortable and the light was not good, since he obstructed it on his side and his co-worker on the other, but there was enough to enable him to see the nut, as he admitted in his testimony. A claim of inability to do so could hardly stand in view of the space, about seven feet between the pillars and three feet between the floor and the bottom of the cylinder. The obstructing pull rod could have been detached, but the plaintiff and his co-worker, following the customary method, left it undisturbed except at the point of connection with the bottom of the chamber. They had never seen the work done in any other way and were given no directions as to removal of the pull rod.

There was no element of danger in the place in which the plaintiff was working when injured. Nothing above could fall upon him. Below him, there was no pit into which he could fall. He was not within reach of any running machinery by which he could be struck or caught. Nowhere about him were there any operations threatening or working danger or injury to him. The unfortunate blow emanated from his own work, though he may not have negligently caused it. In this connection, no more is intended than the assertion that it did not emanate from the place of work and was not caused by it. To set or tighten a nut with a cold chisel and hammer in any other place, with a like distance between the nut and the eye, would expose the operator to a like injury. The danger, therefore, was not in the place, but in the manner in which the work was done. That taken into consideration, the place was not dangerous within the meaning of the law. The master is not required to furnish the employer an absolutely safe place of work. It suffices that he furnish him a reasonably safe place. *Riley* v. *W: Va. Cent. & P. Ry.*, 27 W. Va. 145; *Berns* v. *Gaston Gas Coal Co.*, 27 W. Va. 285; *Williams* v. *Belmont Coal Co.*, 55 W. Va. 84; *Hull* v. *Virginian R Co.*, 78 W. Va. 25. There is no room for two reasonable opinions as to the reasonable safety of the place in question, nor is there any appreciable evidence of unsafety thereof, within the meaning of the law.

A suggestion that a chisel or bar long enough to permit the driving of the nut, from a standing position by the side of the engine, was a practicable and safer instrument or appliance than the one used in the work in question, if sustained by the evidence, does not make the defendant guilty of negligence, in the omission to provide it. It does not appear to have been an implement in general use for such purpose. On the contrary, the proof is that it was improvised and used by a workman or workmen of the defendant, at another one of its plants. Conceding it to have been safer and known to the defendant, it was not negligent in its failure to provide the best and safest implement for the purpose. The measure of its duty was reasonable diligence to provide reasonably suitable and safe tools and appliances.

*Whorley* v. *Raleigh Lumber Co.,* 70 W. Va. 122; *Oliver* v. *Ohio River R. Co.,* 42 W. Va. 703; *Fulton* v. *Crosby Co.,* 57 W. Va. 91.    Besides, if the pull rod had been removed, all of the nuts could have been set with a wrench which is the implement ordinarily used in that work.    It is admitted that suitable wrenches were furnished and used except in instances in which the use thereof was impracticable on account of obstructions.    It is manifest, therefore, that there can be no liability on the ground of failure to furnish suitable tools and implements.

Plaintiff worked at the plant in question, and about the engines operated therein, from October 29, 1918, until March 9, 1919, a period of more than four months, as an oiler, and had ample opportunity to see how the repair work and cleaning was done, before he accepted the position of repairer, on the latter date.    In that period, he had taken down and put up two of the valves or chambers in the customary way; wherefore he knew the method before he accepted the new position.    After acceptance thereof, he had taken down, ground and replaced nine valves, before he was hurt, in replacing the tenth, on March 22, 1919.    Although comparatively inexperienced in that kind of work, he was a mature, and, presumptively, an ordinarily intelligent man, fully capable of apprehending and duly appreciating ordinary dangers such as the one he encountered.    It was so obvious that a man of ordinary intelligence and prudence cannot be heard to say that it was not one of that character. He was just as capable of foreseeing it as his employer or any of its managers, wherefore their failure to bring it to his attention, or provide a means of avoidance thereof, was not an act of negligence.    It was in no sense an extraordinary danger.    It was one of the kind that a servant is deemed by the common law which governs this case, to have assumed in accepting his employment and remaining in it.    *Seldomridge* v. *Chesapeake & Ohio Ry. Co.,* 46 W. Va. 569; *Stewart* v. *Railroad Co.,* 40 W. Va. 188; *Reese* v. *Railroad Co.,* 42 W. Va. 704; *Burton* v. *War Eagle Coal Co.,* 77 W. Va. 319; *Perry* v. *Electric Ry. Co.,* 72 W. Va. 282; *Miller* v. *Berkeley Limestone Co.,* 70 W. Va. 643.

Instructions Nos. 1, 2 and 3 given at the instance of the plaintiff each assumed the existence of evidence of unsafety of the place in which he worked at the time of his injury, and, because. they did, they should have been refused, for reasons already stated. The errors committed in the giving thereof, justified the award of a new trial. Enough has been said to make it clear that instruction No. 1 requested by the defendant should have been given. It was peremptory and if given, would have directed a verdict for the defendant. Its refusal also justified the judgment complained of.

If there should be a new trial, defendant's instructions Nos. 3 and 10 should be refused. The former is broad enough to exclude liability by injury caused by a vice-principal. The latter ignores the claim of liability on the ground of failure to warn the plaintiff of the danger incident to his employment.

Seeing no error in the judgment complained of, we will affirm it.

*Affirmed.*