[Civ. No. 9151. First Appellate District, Division Two.—February 9, 1934.]

ARTHUR McGEORGE, Appellant, v. THE CHARLES NELSON COMPANY, Respondent.

H. W. Hutton for Appellant.

John H. Black and J. Hampton Hoge for Respondent.

SPENCE, J.—Plaintiff sought to recover damages for personal injuries sustained while working on the "Castle Town", a vessel owned and operated by defendant. The cause was tried by the court sitting without a jury and from a judgment in favor of defendant, plaintiff appeals.

The cause was previously tried by the court sitting with a jury. That trial resulted in a judgment in favor of the defendant, which judgment was reversed on appeal because of error in the instructions. (*McGeorge* v. *Charles Nelson Co.*, 107 Cal. App. 148 [290 Pac. 75].) The evidence on the first trial tended to prove certain facts, which facts are

set forth in the opinion on the former appeal. On the second trial all of the evidence produced on the first trial was introduced by stipulation. It is therefore unnecessary to set forth all of said facts herein. We may point out, however, that on the former appeal this court was not passing upon any questions of fact and while the evidence was conflicting in many particulars only certain conflicts are specifically referred to in the opinion. The decision on the former appeal merely held that, in view of the evidence in the record, the instructions given on the subject of assumption of risk were erroneous. The present appeal involves no similar question as there was no jury on the second trial and the court made no findings relating to assumption of risk, the decision against plaintiff resting upon other grounds.

On the second trial both parties offered evidence in addition to that produced upon the first trial, but a reading of all the evidence does not give a very clear picture of the exact situation in the engine-room where the accident occurred. It appears certain, however, that when plaintiff and his assistant attempted to test the nut on the lower end of the low-pressure cylinder, they were working in a cramped position which did not permit entire freedom of action. In order to gain a clearer conception of the situation, the trial judge, pursuant to stipulation and in company with counsel, visited the ship and made an inspection. It is, of course, impossible to know what the trial judge may have observed while making said inspection. We call attention to these facts as the findings of the trial court were to the effect that there was no negligence on the part of defendant or its employees and plaintiff questions the sufficiency of the evidence to sustain the findings.

We will first direct our attention to the contention that there was no evidence to sustain the findings relating to the claim of negligence on the part of Ross, the employee who was assisting the plaintiff. The trial court found that after Ross had delivered several blows on the chisel bar with the sledge hammer he "accidentally and without any negligence of any kind, struck the end of the chisel bar a glancing blow, as a result of which the sledge hammer glanced off and struck the plaintiff a glancing blow on the left side of the face"; that "such a glancing blow is apt to happen

under such circumstances notwithstanding the exercise of ordinary care and did in this instance happen without failure to use ordinary care commensurate with the circumstances and conditions existing at the time and place in question''; that ''said Ross did use reasonable care and precautions under the circumstances and conditions existing to hit the chisel bar squarely, but that without fault or negligence on his part the sledge hammer glanced off the end of the chisel bar and struck plaintiff on the left cheek''. We believe that these findings are amply sustained by the evidence. While there was evidence from which negligence might have been inferred, we cannot say that the trial court was compelled under the evidence to reach the conclusion that Ross was guilty of negligence. Negligence is a relative term and the question of whether Ross exercised ordinary care under the circumstances was a question primarily for the determination of the trial court. In addition to having the benefit of the testimony of the witnesses, the trial court visited the engine-room and actually saw the conditions under which the men were working. The conditions existing at that place were important in determining the issue of negligence and we cannot say that the trial court erred in finding against the claims of the plaintiff.

Plaintiff further contends that there was no evidence to support the findings covering the allegations relating to the alleged failure of the defendant to supply certain tools and appliances. Among these findings was a general finding that ''said vessel was in all respects fully and reasonably equipped with fit and proper tools, wrenches and all other necessary and usual appliances'' and a further finding ''that the use of a chisel bar and sledge hammer was, under the circumstances and conditions existing at the time, the proper, customary and usual method of turning or testing the nut upon which Ross and the plaintiff were working, and said tools were the fit and proper and usual implements for the performance of said work under the circumstances and conditions existing at the time and place in question''. In our opinion there was evidence to support said findings. In order to better understand plaintiff's contentions a further statement of facts is required.

It is apparently conceded that defendant furnished all of the necessary tools and appliances to disassemble the engine.

The nut at the lower end of the cylinder was the same size as the one at the upper end and the wrench which was used to test the upper nut could have been used to test the lower nut in the event that certain portions of the engine had been first removed. On the occasion in question the vessel was out at sea and the parties were concerned with making emergency repairs to remove a knock in the engine. It appears that it was not practical to disassemble the engine because of the possible danger while the vessel would lie helpless during the time required for that purpose. Plaintiff and his helper therefore used the chisel bar and sledge hammer to test the nut without disassembling. In the original complaint plaintiff claimed that defendant was negligent solely because of the failure to supply a wrench for this purpose. The evidence showed that no wrench could be purchased on the market which was suitable for testing the lower nut under the conditions existing without disassembling the engine. There was a conflict as to whether any such wrench could be specially designed and made. Plaintiff's witness Barletta designed a wrench which he claimed could be used for that purpose, but upon actual test it failed to sustain his claims. He thereafter designed another wrench and testified that this last-mentioned wrench would be suitable. Plaintiff lays stress upon the fact that one of defendant's witnesses conceded that it would be possible, although extremely difficult, to use a wrench of that design. The witness' testimony on this subject was as follows: "A. I would say that it is possible, but extremely difficult to use it. It goes up into place, and the space that is left to strike that with the maul is so small that the wrench wouldn't be very efficient. It is possible to strike it, but a very light blow. The reason is that there is a grating just about, I should judge, four inches below the line of that wrench. It goes across between the cylinders, and the distance from the side of the handle on the wrench, 'Exhibit E', I think it is, to the side of the column is about nine inches, and then from the side of the column over to the grating is about twelve inches, which makes a total of twenty-one inches from the side of the wrench to the edge of the grating; and the length of the maul that is introduced in evidence there is about eight inches, so that there is about thirteen inches of a swing possible between the

side of the grating and the side of the wrench." But even assuming that a wrench of special design could have been made and effectively used for the purpose of testing said nut in an emergency, it does not follow that defendant was under obligation to furnish such wrench. Defendant was not required to furnish the best and safest possible tools, but its duty was discharged by furnishing tools which were reasonably safe and fit for the purpose for which they were used. (*Cincinnati, N. O. & T. P. Ry. Co.* v. *Gossett,* 230 Ky. 240 [18 S. W. (2d) 986]; *Smith* v. *United Fuel Gas Co.,* 91 W. Va. 52 [112 S. E. 205]; 16 Cal. Jur. 1602.) There was testimony to show that the chisel bar and sledge hammer were customarily used and were reasonably safe and fit tools for use under the circumstances. In our opinion all of the findings above set forth find support in the evidence.

After the determination of the former appeal plaintiff filed an amendment to his complaint in which it was alleged that although there was a wrench on board the vessel that could be used upon said lower nut, it could only be employed "by the use of an apparatus called a slip or a strong back and thereby hang up the said piston rod and piston and drop the connecting rod all in said low pressure cylinder". It was further alleged that no such slip or strong-back was furnished and that use of the chisel bar and sledge hammer was thereby made necessary. The trial court found "that it is not true that the use of said chisel bar and sledge hammer for the purpose of tightening up said nut at the lower end of the piston rod of the low-pressure cylinder was necessitated or occasioned through any lack or absence of a slip, strongback or other apparatus"; that "it is true that there was a wrench aboard the vessel which would fit the said nut under certain circumstances, but it is not true that the use of said wrench was prevented or made impractical because of the lack of any appliances or devices of any nature or description aboard said vessel; it is not true that no apparatus had been furnished by the defendant aboard said vessel for the purpose of hanging up the piston and piston rod of said low pressure cylinder". The slip or strong-back is an appliance used in disassembling the engine, but the evidence showed that it was not practical to disassemble the engine for emergency repairs at sea. Furthermore, even if practical to disassemble the engine under the circumstances,

the evidence showed that the vessel was equipped with a chain fall and wire strip which could have been used for this purpose and further showed that this particular portion of the engine could have been disassembled without any of said appliances, but merely with the aid of a "wood block underneath the crosshead". We are therefore of the opinion that the findings covering the allegations contained in plaintiff's amendment are supported by the evidence.

The remaining contentions of the plaintiff relate to the alleged insufficiency of the evidence to sustain the findings respecting plaintiff's injuries. These contentions need not be discussed as the foregoing conclusions sustaining the findings which absolve the defendant from liability require an affirmance of the judgment.

. The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a hearing of this cause was denied by the District Court of Appeal on March 10, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 9, 1934.