West Virginia Northern Railroad Company prosecutes this writ of error to a judgment of the Circuit Court of Preston County, for the sum of Twenty Thousand Dollars, in an action at law pending in said court, in which George Pritt was plaintiff and said railroad company was defendant. There was a jury trial, and the judgment aforesaid was entered on the verdict returned by the jury, and after motion to set aside the verdict had been made in the trial court and overruled. Due and proper exception was taken to the ruling of the court, both as to the said verdict and the judgment entered thereon.
Plaintiff in error, in its petition for this writ of error, assigned twenty separate grounds of error; and in its brief filed in this Court assigned thirty-five grounds of error. Without intending to ignore such assignments, we are of the opinion that our decision must depend on our conclusions on three fundamental questions raised in the court below, and raised and argued here. These questions are: (1) Was the plaintiff, at the date of his injury, employed in interstate commerce and thus entitled to rely on the provisions of the Federal Employers' *Page 186 
Liability Act enacted by the Congress of the United States, which admittedly controls the recovery of damages for injuries sustained while the injured person is employed in interstate commerce; (2) Was the defendant guilty of an act of negligence which was the proximate cause of plaintiff's injuries, and on which the plaintiff was entitled to recover damages under the provisions of the Federal Employers' Liability Act aforesaid; and (3) Did the fact that the defendant was a contributor to the Workmen's Compensation Fund of this State, and the further fact that the plaintiff, following the injuries for which he seeks damages herein, applied to and received benefits from said fund, based on such injuries, estop him from prosecuting this action, on the contention that such award of compensation was res judicata of all questions involved herein, except that of negligence.
Other points of error will be discussed, but we will give first consideration to the three questions stated above.
The West Virginia Northern Railroad extends from Kingwood to Tunnelton, and is located entirely within Preston County, West Virginia. It connects with one of the main lines of the Baltimore and Ohio Railroad at Tunnelton. A number of coal mines are located and in operation along its line, and switches or spurs lead from its main track to such coal operations. The production from said mines is carried over its line to Tunnelton, where it is delivered to the Baltimore and Ohio Railroad, and the great volume thereof, estimated at ninety percent, enters interstate commerce. On the other hand, some of such coal production and other freight is delivered to points within the State and constitute intrastate commerce.
The point of the accident in which the plaintiff was injured was on a switch or spur leading from the defendant's main line to a coal tipple owned by the Blake Coal Company, over which the defendant had the right *Page 187 
to operate its equipment. It was customary for the defendant railroad company to collect empty coal cars from the exchange track of the Baltimore and Ohio Railroad at Tunnelton, and then distribute such cars among the several coal operations along its line. On March 7, 1946, it used two locomotives to distribute twenty empty coal cars in the manner aforesaid, and a short distance out of Tunnelton, and in the direction of Kingwood, all said empties were assembled as one train, with one locomotive in front and the other in the rear. When the siding or spur leading to the tipple of the Blake Coal Company was reached, the conductor of the train ordered that the empty car immediately behind the front locomotive be cut out of the train and placed under the tipple of the coal company, and this was done. The car so placed was a Norfolk and Western Railway Company car numbered No. 73179. The car was of more than the height of the average car used in coal traffic. According to the testimony, it was twelve feet ten and one-fourth inches from the top of the railroad rail to the top of the brake wheel of the car, and the distance from the said rail to the bottom of the chute of the tipple under which the car was placed, was twelve feet eleven and one-half inches, so that the clearance was about one inch. Such clearance, when cars of average height were used, was from twenty-two to twenty-three inches. On each side of the railroad siding at the point where it first passed under the tipple were upright timbers, and the clearance between the side of the car and the upright timbers was about eight inches, and insufficient to permit a passage by clinging to the side of the car. It is in evidence that cars of the height of the car No. 73179, had been placed under the said tipple on numerous occasions; that the tipple had been in use for twenty years, and that no injuries had, up to the date of plaintiff's misfortune, been suffered by anyone. Cars of that height had been placed under said tipple while plaintiff had been in defendant's service as a brakeman. *Page 188 
Plaintiff was first employed by the defendant railroad company in January, 1942, and worked until July of that year, when he was called into the Armed Services of the United States. On his discharge from that service he resumed his employment in October, 1945, and at the date of his injury, March 7, 1946, was employed as a brakeman. As heretofore stated the train of twenty empty cars was assembled on defendant's line, a short distance outside of Tunnelton, for the purpose of distributing said cars among the coal operations along its line, and plaintiff was the brakeman on said train whose duty it was, under the direction of the train conductor, to assist in cutting off and placing cars, throw and close switches, and perform such other work as might be required of one holding that position. Plaintiff was ordered to assist in placing a car under the tipple of the Blake Coal Company, and the car so ordered placed was the front car in the train, and was of the number and height heretofore stated. This car was cut off the train and carried by the locomotive beyond the point of the switch leading into the Blake Coal Company tipple. Plaintiff then opened the switch, and when the car was cut off from the locomotive and passed over the switch and onto the siding it was boarded by plaintiff so that he could apply the brakes thereon, and place the car in proper position under the tipple. The brake wheel was on the front of the car in the direction in which it was moving, and there was a steel ladder to the left of the brake wheel where the brakeman stood on the small platform on the front of the car from which the brake wheel was operated. Plaintiff alleges and testifies that in boarding the car, and in operating the brakes, he did not observe or realize the height of the car, or his danger, until he was within fifteen feet of the tipple; that he had his arm around the brake wheel, and before he could change the position of his arm and move to a place of safety his arm came into contact with some part of the tipple, and he was thrown from the car on the flat of his back, between the rails of the track, a portion of the car passed over him, and he was pinned to the ground by a safety *Page 189 
bar under the car, connected with the brake, which, to effect his release, necessitated raising the car by the use of a jack owned by the coal company, but readily available. As a result of this accident, the plaintiff suffered grave and serious injuries, the nature of which was testified to by many witnesses, and as to which there is no conflict in the evidence. Complaint is made in plaintiff's declaration that the defendant had not provided a jack and other first aid facilities. We do not think the circumstances of this case required such precautions, but assuming they did, plaintiff nevertheless received prompt attention, and is not shown to have suffered from any lack of care, after his accident. Nor do we think that the makeup of the train crew, or failure of the defendant to publish and enforce safety rules, in any way contributed to plaintiff's injuries. So far as we can observe from the record, the important question which the jury had a right to determine, was whether the act of the defendant, in ordering plaintiff into a place of danger, constituted an act of negligence on which recovery may be had.
Stripped of the matters referred to above, the declaration contains the following allegations:
 "* * * Plaintiff further says that it was the duty of the said defendant, through its officers, agents and supervisors, to observe the height of the several cars in said twenty-two car train and to direct the placing of cars under said Blake tipple which would clear said tipple without unnecessary risk to life or limb of the plaintiff, or anyone serving as brakeman thereon; * * * however, notwithstanding said duties and each of them, the defendant, through its said conductor and agent, negligently directed the plaintiff to switch said Norfolk and Western car into and under said Blake tipple, said car being too high to go safely under said tipple without unnecessary risk to the life and limb of the plaintiff; * * *" *Page 190 
There was a demurrer to the declaration and seven grounds were assigned therefor: (1), it was alleged that the declaration was wholly insufficient to show any legal negligence on the part of defendant; (2) that the declaration did not sufficiently state grounds upon which liability could be established against the defendant in connection with the right to use the spur and tipple mentioned therein; (3) that the allegation of the declaration with respect to the height of the Norfolk and Western car was insufficient: (4) also that that part of the declaration which alleged the duty of the defendant through its officers and agents to observe the height of cars directed to be placed under the tipple was insufficient; (5) that that part of the declaration which referred to the alleged duty of the defendant to make rules for the safety of its employees was insufficient; (6) that the part thereof which alleged the duty of the defendant to have one conductor and two brakemen in the operation of the train involved was not sufficiently alleged; and (7) that that part of the declaration which charged that it was the duty of the defendant to have an employee walk in front of the car being placed at the tipple so as to notify the engineer of any danger involved in placing the car thereunder stated no ground of action.
The demurrer was overruled, and there was no motion to strike from the declaration any of the allegations complained of in the demurrer. We are of the opinion that the allegation quoted above stated a good cause of action, and if the declaration stated one good cause of action there was no error in overruling the demurrer to the whole declaration. If the defendant desired to have eliminated from the declaration any part thereof, and particularly the parts mentioned in its demurrer, a motion to strike the same from the declaration should have been made. We are of the opinion that the parts of the declaration referred to in the fifth, sixth and seventh points of the assigned grounds of demurrer did not allege a basis of liability against the defendant; and if motion had been made that they be stricken from the declaration *Page 191 
that motion should have been sustained. However, at the end of plaintiff's evidence in the trial of the case, there was a motion for a directed verdict in favor of the defendant, and in passing on said motion the trial court said:
 "The motion is overruled as to certain grounds of negligence stated in the declaration. It is sustained as to certain other grounds of negligence in the declaration, which the Court will single out in the declaration by striking through with red pencil. The theory of the plaintiff that a consecutive chain of negligent acts is the basis of the plaintiff's action. This chain is not necessarily consecutive, nor are all the parts necessary, and certain ones which the plaintiff has failed to show by evidence will, as stated before, be stricken out, and the jury will be instructed by the Court to disregard these red pencil lines. As to the other grounds not so marked, the motion of the defendant is as stated overruled and as to those grounds of negligence not so stricken from the declaration. Exception saved to the defendant generally."
There is nothing in the printed record, nor in the transcript of record furnished this Court, indicating what part of the declaration was stricken by the trial court, and therefore we cannot arrive at any conclusion as to whether the court committed error in respect to the allegations stricken, and those which he permitted to remain in the declaration. As will hereinafter appear, we are of the opinion that no appreciable amount of evidence was produced in support of any of the matters alleged in the declaration, with respect to which objection was made in the demurrer of the defendant aforesaid.
After defendant's demurrer was overruled, it filed its general issue plea, and Plea No. 2 which was a plea averring that after plaintiff's accident, he applied for compensation to the Compensation Commissioner of the State of West Virginia, and was awarded compensation *Page 192 
at the rate of $18.00 per week and given allowance in a large sum for medical services, hospital bills and nurses' hire. There was a demurrer to this plea which the court overruled, after the beginning of the trial of the case before the jury, and objection is made to this procedure, and due exception taken to the action of the court in respect not only to the overruling of the demurrer, but to the other points raised.
As indicated above, the case was tried before a jury which returned a verdict for the plaintiff in the sum of $20,000.00, on which judgment was entered, after a motion to set aside the verdict had been overruled, and exception to the court's action was taken at the time. During the course of the trial, numerous exceptions were taken to the action of the court in admitting or refusing to admit testimony offered by the parties and were saved on the record.
The first question to be considered is whether the plaintiff may sustain his action under the Federal Employers' Liability Act, United States Code Annotated, Title 45, Chapter 2, Section 51, the pertinent portion of which section reads:
 "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. *Page 193 
 "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Chapter." (Emphasis ours.)
The Federal Employers' Liability Act was first enacted in 1906, and, being held unconstitutional, was enacted in somewhat different form in the year 1908. Amendments were made from time to time, and there was much litigation, in both State and Federal courts, principally on the question of whether, under given circumstances, the Act should apply. The particular point of difficulty was in determining the line between what is called "interstate commerce" and "intrastate commerce", especially where railroads were engaged in both types of commerce. Hundreds of cases have been decided on the question by which almost any position taken on that question may be substantiated, and apparently the confusion grew to such an extent that Congress took notice thereof and passed an amendment to the Act in the year 1939, which contains the language underscored in the quotation above, the apparent general purpose of which was to simplify, if possible, the question which had caused so much difficulty theretofore.
It is obvious that the crucial test in this case is whether, on the date of his injury plaintiff was "employed by such carrer in such (interstate) commerce". If he was not so employed, he must rely for his redress on the common law, or on the statutes of the State providing for compensation for injuries suffered by workmen employed in industry other than interstate commerce. Where, as here, the facts bearing on that question are not in dispute, the decision is generally one of law for the court. In Smith v. United Fuel Gas Company, 91 W. Va. 52,112 S.E. 205, this Court held: *Page 194 
 "Upon an admitted or clearly established state of facts, the question whether an employer's business is interstate or intrastate in character, is generally one of law for determination by the court."
And in Antonio v. Pennsylvania Railroad Company, (Pa.)38 A.2d 705, it is held:
 "Where facts are undisputed, question whether employee was engaged in interstate transportation when fatally injured must be determined by Superior Court as a matter of law."
Where facts are in dispute the question is one for jury determination. Avance v. Thompson, (Ill.) 55 N.E.2d 57.
We are of the opinion that the plaintiff, at the date of his injury, was employed in interstate commerce. The principal part of the business of the defendant, estimated to be ninety percent, is in traffic intended for interstate commerce, and traffic delivered to an interstate carrier for that character of transportation. The fact that its line is entirely within this State does not make it an intrastate carrier, as to traffic carried over its lines, and either received from or delivered to a carrier operating in interstate commerce, and which has been transported in such commerce, or is intended to be so transported. In such cases, many decisions, State and Federal, have held the carrier and its employees to be engaged in interstate commerce. The early cases of Pedersen v. RailroadCompany, 229 U.S. 146, and Railway Company v. Seale,229 U.S. 156, settled the law on that point and have not been departed from in later cases. See also 35 Am. Jur. 857; Findley v.Railway Company, 76 W. Va. 747, 87 S.E. 198; and Smith v.United Fuel Gas Company, supra.
We do not anticipate that this statement of law will be controverted, but it is contended that to bring an injured *Page 195 
servant within the Federal Act, he must, at the time of his injury, be engaged in interstate commerce, and that the mere placing of a car for loading, even though when loaded it was carried over defendant's line and delivered to an interstate carrier, and by it transported to a point without this State, did not constitute interstate commerce. In Watts v. ElectricRailway Company, 78 W. Va. 144, 88 S.E. 659, it was held:
 "* * * To make the federal act applicable, the injured servant must be engaged in interstate commerce at the time of injury."
and many cases from other jurisdictions could be cited to sustain that statement. Prior to 1939, there had been numerous cases decided, involving this question of whether in a given case an injured or deceased servant had at the time of his injury or death been engaged in intrastate or interstate commerce. These cases, based as they were on the particular facts of each case, had tendency to confuse rather than enlighten, and it would serve no good purpose to discuss or even cite them. It is fair to assume that due to this situation the 1939 Amendment to the Federal Employers' Liability Act was made. The amendment does much to clarify the Act. If the servant's duties are in "furtherance" or "in any way directly or closely and substantially affect such commerce" he is protected by the Act. Since the amendment was made many cases have been decided construing the same. In Ermin v. PennsylvaniaRailroad Company, 36 F. Supp. 936 it was held:
 "Amendment of the Federal Employers' Liability Act was intended to bring within scope of the Act all employees whose work at time of injury was not in actual interstate transportation or a part of it, but any part of whose work furthered interstate commerce, or in any way affected such commerce directly, closely, and substantially." *Page 196 
And further "Congress had power to include intrastate employment, which affects interstate commerce, within scope of Federal Employers' Liability Act." See also Agostino v.Pennsylvania Railroad Company, 50 F. Supp. 726; Zimmerman v.Scandrett, 57 F. Supp. 799; Missouri Pacific Railway Co. v.Fisher, (Ark.) 177 S.W.2d 725; Taylor v. Lumaghi Coal Co., (Mo.) 181 S.W.2d 536.
In Edwards v. B. O. R. R. Co., 131 F.2d 366, it was held:
 "The 1939 amendment to the Federal Employers' Liability Act bringing within the scope thereof any employee of a carrier any part of whose duties as such employee is in furtherance of interstate or foreign commerce, or in any way directly or closely and substantially affecting such commerce, was intended to include within the Act any employee who performs services which in any way further or affect interstate commerce and to avoid the difficulty under original Act of ascertaining when a workman was entitled to the benefit thereof."
And in Ford v. Louisville Nashville R. R. Co., (Mo.)196 S.W.2d 163, it was held that:
 "Under the Federal Employers' Liability Act, it is not necessary that any part of the employee's duties be in furtherance of interstate commerce on the very day of his injury. Federal Employers' Liability Act, Sec. 1, as amended, 45 U.S.C.A. Sec. 51."
It would thus appear that courts have construed the 1939 amendment as broadening very materially the scope of the Federal Employers' Liability Act, and it seems clear that, as the said amendment has been interpreted by the courts, the general employment of the servant is determinative of whether or not he is protected by the Federal Act, and that the fact that on a particular occasion he may be performing acts not strictly within *Page 197 
interstate commerce is not always determinative of his rights.
It is common knowledge that common carrier railroads, with few, if any exceptions, engage in both intrastate and interstate commerce. It must be recognized that as to interstate commerce, the regulation thereof, including employer and employee relationship, is solely within the power of the Congress, whenever it chooses to exercise that power, leaving to the legislatures of the states the regulation of purely intrastate traffic and its attendant problems. As a practical matter, either the Congress or the Legislature should endeavor to draw some line of distinction, and if either fail to do so, the courts must act. Here the Congress has acted, and has liberalized the Act to the point where if the duties of a servant are in furtherance of, or substantially affect interstate commerce, he is within the Act. We think the 1939 amendment greatly simplifies our task. It seems clear to us that the plaintiff, when he assisted in placing a car to be loaded with a commodity to be transported in interstate commerce was engaged in an act which was in furtherance, necessary to, and which effectively promoted interstate commerce, and was, therefore at the date of his injury, employed in interstate commerce, and entitled to maintain this action under the provisions of the Federal Employers' Liability Act.
We do not understand that the 1939 amendment operates, or was intended, to bring within the scope of the Federal Employers' Liability Act employers engaged solely in intrastate commerce. Of course, any attempt to do so would meet with the constitutional barrier that no power to make such enactment was conferred on the Congress by the Federal Constitution, and not being so conferred does not exist. All the amendment did was to mark the line to which the Federal Act might be extended, as to a matter about which there was much uncertainty and confusion. If the Congress could constitutionally enact the Federal Employers' Liability Act, *Page 198 
and on that point there can be no doubt of its power to do so, then, necessarily, it may clarify and make effective the terms and the application thereof; and, in our opinion, it did not exceed its constitutional power when, by the 1939 amendment it brought within the protection of the Act, employees of railroads whose duties were performed in furtherance of, or closely and substantially affected interstate commerce. It was not, in the circumstances, an unreasonable extension of the original Act, nor did it make out of what was plainly an intrastate employment, an employment in interstate commerce.
Being of opinion that the plaintiff was entitled to prosecute his action under the Federal Employers' Liability Act, we reach the question of whether the defendant was guilty of actionable negligence under the Act; for recovery can be had under the Act only where injury or death has occurred, resulting "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."
There is little dispute in the testimony as to the circumstances surrounding plaintiff's injury. We have already stated the facts leading up to the injury. The question of whether the defendant was negligent depends on whether there was a duty resting upon it to see that the track and the tipple were of such construction as would render it safe for its employees to place cars thereunder. The defendant did not have any control or supervision over the tipple, as such; but having the right to use the spur leading to the tipple, and assuming the right of its employees to place cars thereunder, it was, in our opinion, under a duty not to order its servants into an obviously dangerous place. The plaintiff herein was under the direction of the conductor of the train, and when he was ordered by the conductor *Page 199 
to place the Norfolk and Western car under the tipple, it was his obligation to obey that order, and he did so. Apparently no one realized the danger which was involved in the direction of the conductor to the plaintiff until it was too late to avoid the accident. If it be contended that the plaintiff should have observed the danger, and that he assumed the risk, we are met by Title 45 U.S.C.A., Sec. 54 which provides among other things that "* * * such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents or employees of such carrier; * * *"
As is well known, under Section 53, of the same Title, contributory negligence, if any existed, can be used only in diminution of damages.
It seems unnecessary to restate the position of this Court on the weight that will be given to the finding of a jury on a question of fact. Here the issue involved of whether defendant was negligent by reason of the direction given to the plaintiff by its agent and employee, the conductor, is a question of fact on which different men might reach different conclusions. The jury by its verdict has held that the defendant was guilty of negligence. We would not be justified in disturbing that finding unless we believed such verdict to be plainly wrong. We are therefore of the opinion that the verdict of the jury on the matters submitted to it must be upheld.
The next question is one of law, and involves the legal effect of the action of the plaintiff in applying for, and accepting compensation, from the Workmen's Compensation Fund of the State of West Virginia, on account of the injuries for which he prosecutes this action against the defendant. The defendant, at the date of plaintiff's injury, was a contributor to the Workmen's Compensation Fund of said State, and over a term of years had contributed to said Fund a substantial sum of money. *Page 200 
But, in the very nature of things, such contribution could do nothing more than afford protection to the contributor, and to its employees, as to purely intrastate employment. The Congress of the United States having power to enact the Federal Employers' Liability Act, its terms controlled all employment in interstate commerce, and our State Compensation Act could in no way affect the force and effect of the Federal Act.
This fact has been recognized since the first enactment of our State Compensation laws, when by Chapter 10, Acts of the Legislature 1913, the Compensation Fund was set up. Section 52 of that Act made provision for situations where employers and employees were engaged in intrastate employment, and at the same time in interstate employment. Amendments to this section were made by Chapter 9, Acts of the Legislature, 1915; Chapter 131, Acts of the Legislature 1919. In all of these Acts the section covered all types of cases, and apparently, in terms, included railroads doing an interstate business; but by Chapter 68, Acts of the Legislature, 1925, there was added to Section 52 this provision:
 "Provided however that this Act shall not apply to employees of employers engaged in interstate commerce."
and by Chapter 71, Acts of the Legislature, 1929, the proviso was made to read:
 "Provided however, That this chapter shall not apply to employees of steam railroads, or steam railroads partly electrified, or express companies, engaged in interstate commerce."
Section 52 aforesaid, now appears in our statute law, as Code, 23-2-10 and is merely a restatement, in substance, of what has always been our statute law on the subject, and reads as follows:
 "In case any employer within the meaning of this chapter is also engaged in interstate or *Page 201 
foreign commerce, and for whom a rule of liability or method of compensation has been established by the Congress of the United States, this chapter shall apply to him only to the extent that his mutual connection with work in this State is clearly separable and distinguishable from his interstate work, and in such case such employer and any of his employees thus engaged in both intrastate and interstate work may, with the approval of the commissioner, elect to pay into the fund the premiums provided by this chapter on account of work done in this State only, by filing written acceptances or a joint election with the commissioner, and such election when filed and approved by the commissioner shall subject the acceptor irrevocably to the provisions of the chapter to all intents and purposes as if they had been originally included in its terms. Payments of premiums shall be on the basis of the payroll of the employees who accept as aforesaid, for work done in this State only.
 "Unless and until the Congress of the United States has by appropriate legislation established a rule of liability or method of compensation governing employers and employees engaged in commerce within the purview of the commerce clause of the Federal Constitution (article one, section eight), section one (§ 2511) of this article shall apply without regard to the interstate or intrastate character or nature of the work or business engaged in: Provided, however, That this chapter shall not apply to employees of steam railroads, or steam railroads partly electrified, or express companies, engaged in interstate commerce."
The purpose of Section 52 has been discussed in Suttle v. GasCo., 82 W. Va. 729, 97 S.E. 429. See also Miller v. Gas Co.,88 W. Va. 82, 106 S.E. 419. Under the holding of those cases, even as to employment other than by railroads and express companies, to bring an employee within the compensation laws his work must be clearly separable and distinguished from work in interstate commerce, or there must be some agreement between the *Page 202 
employer and the Compensation Commissioner as provided by Section 52 of the original Acts aforesaid, and now by Code,23-2-10.
We have dealt with and quoted these statutes to show that it has always been understood that our compensation laws were intended to cover intrastate employment only, and that the Legislature has meticulously guarded against any encroachment on employment in interstate commerce, finally reaching the point where it has been provided specifically that the Section which permitted employers and the Compensation Commissioner to agree upon a schedule of premiums or contributions to the Fund, in cases where the work involved both intrastate and interstate commerce employment, should not apply to railroads. This being true there is no middle ground. Either the plaintiff's employment in an intrastate activity must have been shown to be clearly separable and distinguishable from interstate employment, and therefore within our compensation law, or plaintiff was employed in interstate commerce directly, or in furtherance thereof, or in work which closely and substantially affected such commerce, in which event he was not entitled to benefits from the State Compensation Fund, but must look to the common law, or, at his election, to the Federal Employers' Liability Act for relief, in case of injury; and in case of death his personal representative or his dependants must do likewise.
If, as we hold, the plaintiff at the date of his injury was employed in interstate commerce, within the meaning of the Federal Employers' Liability Act as amended, then he was not entitled to benefits from the State Compensation Fund, and his award of such benefits was improper, and an act on the part of the Compensation Commissioner without warrant in law. Such award we think should be treated as null and void from the beginning. If this course be followed, such an award of compensation, under whatever circumstances made, cannot, we think, be made the basis of estoppel or res judicata. The *Page 203 
invalidity of the award is a matter of which the Compensation Department may complain, but third parties may not take advantage thereof.
Plaintiff in error relies strongly on the cases ofRailway Company v. Schendel and Railway Company v. Elder,270 U.S. 611. In that case Hope, the decedent of the plaintiff in the first case, and the plaintiff Elder in the second case, were involved in a railway accident in the State of Iowa. It appears that in that state the employer may make application under the compensation law for benefits to its employees, and this appears to have been done. In the case of Hope, who died as a result of the accident, there was an award of compensation by the appropriate authority in Iowa, which was approved by a court of record of that state; and there was an application for compensation filed on the part of Elder, which was pending, undetermined, when suits were brought to recover damages for the same injuries in a Minnesota Court. The question involved in both cases was whether the injured person, and the decedent, were at the date of the accident engaged in interstate or intrastate commerce. In the Hope case which reached a court of record in Iowa, it was held that the decedent was engaged in intrastate commerce. The action of the Minnesota Court, in refusing to give effect to the Iowa judgment in either case, was submitted to the Supreme Court of Minnesota, and the judgments appealed from were affirmed, and from that court the cases went to the Supreme Court of the United States, with the result that it was held that the judgment of the Iowa court in the Hope case was res judicata; but that inasmuch as here had been no enforcible award of compensation made in the Elder
case in Iowa, and there having been, in the meantime, a suit instituted in Minnesota, the doctrine of res judicata was not applicable. The Hope case was reversed, and the Elder case affirmed.
In the case of Maxwell v. Kurn, (Mo.) 180 S.W.2d 249, it was held: *Page 204 
 "In absence of any proof before Workmen's Compensation Commission, or any finding by it that railroad company's employee was engaged in intrastate commerce at the time of his injury, the award of compensation by Commission was not res judicata of issues raised in employee's action under Federal Employers' Liability Act."
This holding would seem to indicate that unless it affirmatively appears that an applicant for compensation is engaged in intrastate commerce, a Compensation Commissioner would have no right to award compensation, and that the granting of compensation in such circumstances would not beres judicata of any question passed on by such official. Furthermore, the question naturally arises whether res judicata
ever arises through the action of an administrative official such as a Workmen's Compensation Commissioner. Generally, the adjudication of any question implies the submission of that question to a court of record.
We have dealt with this point at some length by resorting to decisions from other jurisdictions. We think, however, the question in its broad aspects, has been settled in this State by the case of Adams v. Power Company, 102 W. Va. 66,135 S.E. 662. In that case it was held:
 "An employer engaged in intrastate and interstate commerce and failing to file written acceptances or joint election, as provided by Section 52 of the Workmen's Compensation Law (Chapter 15-P Code 1923), is not protected by the act against damages for injury to one of its employees while working in the interstate service." and "The employee in such case not being entitled to compensation under the Workmen's Compensation Law is not estopped by applying for and accepting current benefits thereunder from afterwards instituting action at common law against his employer for damages." *Page 205 
The opinion in that case furnishes the following statement of the question arising therein:
 "The alleged negligence of the defendant in failing to furnish plaintiff a reasonably safe place to work is the basis of the action. The declaration further charges that the defendant being engaged in interstate commerce not having complied with Section 52 of the Workmen's Compensation Statute, is not within the protection of the Act. The defendant maintains: (1) that it was not guilty of negligence; (2) that the plaintiff was guilty of contributory negligence; (3) that the work in which plaintiff was engaged at the time of his injury did not relate to interstate commerce; and (4) that the plaintiff, by applying for and accepting benefits under the Compensation Act, is estopped to deny the defendant its protection."
On these questions the Court made its finding as stated above.
We think the Adams case is in line with general authority in other jurisdictions. We are of the opinion that where defendant is engaged in interstate commerce as in the case at bar, and is at the same time engaged in intrastate commerce it must, if it desires to have the benefit of its contribution to the Workmen's Compensation Fund, separate and distinguish the work it does in interstate commerce, and furnish evidence of that fact, even though our statutory provision which permits this to be done does not now apply to railroads. We assume that if it could be definitely shown that a person was engaged in employment, confined solely to intrastate work, and was in no sense of the word employed in furtherance of interstate commerce, such employer would be entitled to the protection of the Workmen's Compensation Act. This, however, has not been done in this case. On the other hand, it rather clearly appears that the work in which the plaintiff was employed was in furtherance of interstate commerce, and closely affected the same. We are of the opinion that under the 1939 *Page 206 
amendment, if not under the act prior thereto, the plaintiff was employed in interstate commerce, in every reasonable sense of the term. That being true, there was no basis whatever for the award of compensation made to the plaintiff and theAdams case is authority for the view that the mere act of claiming compensation and receiving it does not create estoppel against the prosecution of an action against the employer for the injury sustained. The Adams case was decided in 1926, has not been modified or overruled, stands as the settled law in this State, and we do not think we would be justified in departing therefrom.
On the whole, we are of the opinion the action of the plaintiff below in applying for and in accepting the benefits of an award of compensation from the State Compensation Fund does not bar his action against the defendant below, or the entry of the judgment in such action. The award of compensation was made without any proof of employment in intrastate activity, and, without such showing, the Compensation Commissioner was without jurisdiction to entertain the claim, and his award was in legal effect a nullity, constituted no bar to a resort by the injured servant to his rights under the Federal Employers' Liability Act, and being an action without jurisdiction could be in no event treated as res judicata of any question relating to an award of compensation.
It remains to consider other assigned errors growing out of procedure, and those arising on the trial. The demurrer to the declaration was properly overruled. Clearly the declaration alleged at least one ground which, if established by evidence, would entitle plaintiff to recover. As stated above, there was no motion to strike from the declaration allegedly improper matter, and such matter as was stricken during the trial was not identified on the record before us. We are not permitted to indulge in conjecture as to what was stricken. Whether error was committed by the trial court, in respect to what *Page 207 
was or was not stricken from the declaration, cannot be determined from the record before us.
Plea No. 2 filed by the defendant below, raised the question of plaintiff's application for and acceptance of compensation benefits. This matter has been fully discussed in this opinion and need not be further considered. The court did not err in sustaining plaintiff's demurrer to said plea. The court's failure to rule on said plea and demurrer until after the jury was sworn to try the case, was a mere irregularity, having no prejudicial effect as to either party, and did not constitute reversible error.
There was no error in the giving of plaintiff's Instruction No. 3. There was sufficient evidence in the case to justify the instruction. Plaintiff's Instruction No. 5 was not prejudicial to the defendant. In our view of the case any consideration of premiums paid or compensation paid was improper. Plaintiff's Instructions Nos. 6 and 7, while general in terms, cannot be said to state unsound principles of law and it was not error to give them.
Defendant's Instruction No. 1 was a peremptory instruction to find for the defendant, and was properly refused. Defendant's Instruction No. 4 contained the statement that "defendant is not bound under all circumstances to provide a safe place for an employee to work." The instruction then proceeds to state that the duty of the defendant was "to use reasonable care to furnish its employees with a safe place to work." Technically the instruction as offered may not be defective but, in the circumstances of the case, and because it was calculated to mislead the jury, we do not think it was reversible error to refuse to give the same. In the state of the record we are unable to determine whether defendant's Instructions Nos. 6 and 7 should have been given. Aside from this, the question of whether the defendant below should have had two brakemen on duty instead of one, is not of any particular importance in this case, and did *Page 208 
not, in our opinion, affect the jury's verdict. We apply the same reasoning to defendant's Instruction No. 10.
We find no reversible error in the admission or refusal to admit testimony in the trial of the case. We do not think it necessary to go into detail in discussing the numerous errors assigned. There was not a perfect trial, and counsel on both sides are not free from fault in connection with some of the irregularities disclosed by the record. As far as the jury was concerned, its sole function was to determine whether the defendant was guilty of negligence which proximately caused plaintiff's injury. All other questions were questions of law for the court. We think the evidence sustains the jury's verdict on the single question that it had the right to determine, and we do not think there was any error in the introduction of testimony which we would be justified in holding was prejudicial to the defendant.
Seeing no error in the case which we consider prejudicial to the defendant, the judgment of the Circuit Court of Preston County is affirmed.
Affirmed.